PEOPLE v SCOTT

1. CRIMINAL LAW—INSTRUCTIONS TO JURY—INTENT—DEFENSE OF IN-
   TOXICATION—CAPACITY STANDARD.
   An instruction which clearly informed the jury that in order to
   convict they must find that the defendant had the necessary
   intent and that if because of intoxication or any other reason
   he did not have the necessary intent, he must be acquitted, was
   not rendered erroneous by the fact that the court also indicated
   that if the jury found the defendant did not have, by reason of
   intoxication, the capacity to form the intent, they must acquit,
   where the giving of the so-called "capacity standard" did not
   create any irreconcilable conflict, inconsistency, or confusion.

2. TRIAL—INSTRUCTIONS TO JURY—DISCUSSION ABOUT CASE—PREJU-
   DICE—APPEAL AND ERROR.
   Failure of a trial court to remind the jury not to discuss a case
   with others or among themselves does not require reversal
   absent a showing of prejudice.

3. CRIMINAL LAW—ADJOURNMENTS—REASONS FOR ADJOURNMENT—
   TRIAL RECORD—PREJUDICE—MISCARRIAGE OF JUSTICE.
   Criminal trials should not be adjourned or otherwise delayed
   except for good cause shown and explanations for adjournments
   should be on the record, but the mere failure to explain on the
   record the reasons for two lengthy adjournments does not
   mandate a reversal where there were no objections to the
   adjournments by the defendant, there is no indication of how
   the defendant was prejudiced by the adjournments, and defend-
   ant fails to show any miscarriage of justice.

4. CRIMINAL LAW—INSTRUCTIONS TO JURY—AIDING AND ABETTING—
   INTENT—DEFENSE OF INTOXICATION.
   There is no reason to require a trial court to repeat its instruc-

REFERENCES FOR POINTS IN HEADNOTES
[1, 4] 21 Am Jur 2d, Criminal Law §§ 107, 108.
[2] 53 Am Jur, Trial § 899.
[3] 21 Am Jur 2d, Criminal Law § 241 *et seq.*
   Waiver or loss of accused's right to speedy trial. 57 ALR2d 302.
[4] 53 Am Jur, Trial § 647.
[5] 53 Am Jur, Trial § 800.

tions that the underlying intent is a necessary element and that intoxication is a defense to that theory when instructing the jury with respect to aiding and abetting where the court had already clearly instructed the jury on those matters in other portions of its charge.

5. CRIMINAL LAW—INSTRUCTIONS TO JURY—LESSER INCLUDED OFFENSES.

Failure *sua sponte* to instruct the jury as to the lesser included offenses of the crime charged, where the court did not affirmatively exclude the question of lesser included offenses from the jury's consideration, was not reversible error.

Appeal from St. Clair, Halford I. Streeter, J. Submitted Division 2 June 4, 1974, at Detroit. (Docket No. 17216.) Decided October 7, 1974.

James H. Scott was convicted of breaking and entering with intent to commit larceny. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Peter E. Deegan,* Prosecuting Attorney, and *Peter R. George,* Chief Appellate Attorney, for the people.

*John B. Phelps,* Assistant State Appellate Defender, for defendant.

Before: BRONSON, P. J., and QUINN and VAN VALKENBURG,* JJ.

VAN VALKENBURG, J. The defendant was found guilty by a jury on February 6, 1973, of breaking and entering with intent to commit larceny, MCLA 750.110; MSA 28.305.

Five issues are raised for our consideration, the

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

most important one being the claim that the instructions to the jury on the defense of intoxication were erroneous, confusing and contradictory.

The disputed charge reads as follows:

"While voluntary drunkenness is not an excuse for the commission of a crime, where a certain criminal intent is necessary, as in breaking and entering, if the defendant was so intoxicated as to be incapable of entertaining such intent, he cannot be convicted. Proof of the defendant's condition under such circumstances is a 'missible to enable the jury to determine whether or not he could entertain the criminal intent necessary under the statute. He must have the intent to commit a larceny or felony, and whether he doesn't have through intoxication or does not have it for any other reason, if he does not have the intent to commit the larceny or felony, of course, he is innocent."

Defendant argues that since the above quoted charge to the jury contains both the so-called "capacity standard", which the Supreme Court in *People v Crittle,* 390 Mich 367; 212 NW2d 196 (1973) indicated should not be followed, and the so-called "COOLEY standard" found in *People v Walker,* 38 Mich 156, 158 (1878), which found favor in the eyes of the *Crittle* Court, it must be presumed that the jury applied the "capacity standard" and that reversible error resulted.

Defendant is, of course, correct that the charge as given herein contained both the so-called "capacity standard" and the so-called "COOLEY standard". It does not necessarily follow, however, that reversible error resulted. The underlying premise of defendant's argument is that the "capacity standard" as given in the instant case is in irreconcilable conflict with the "COOLEY standard", and therefore, it must be presumed that the jury followed

the improper standard. It is as to this premise that we cannot agree with defendant.[1]

We can understand why defendant feels that there is an irreconcilable conflict between the "capacity standard" and the "COOLEY standard", for the Court's opinion in *Crittle* does seem to leave that impression; however, a closer reading of *Crittle* in light of the narrow holding in that case and in light of the underlying purpose of the *Crittle* criticism of the "capacity standard" leaves us with the abiding conviction that the instruction given herein did not result in reversible error.

It is first necessary to note that the narrow question which confronted the Court in *Crittle* is not present here. In *Crittle* the trial court instructed the jury that they could not acquit unless they found "that he was not conscious of what he was doing or why he was doing it". The Court pointed out that such an instruction precluded the jury from looking to the defendant's actual intent and acquitting on the basis of the absence of that actual intent. The Court took great pains to point out that the instruction in *Crittle* did not even comport with the "capacity standard" promulgated in *Roberts v People,* 19 Mich 401, 418–419 (1870), which provided that the jury should be instructed "that if his mental faculties were so far overcome by the intoxication, that he was not conscious of what he was doing, or if he did know what he was doing, but did not know why he was doing it * * *

---

[1] We would note that neither defendant nor his trial counsel objected to the charge as given. This, however, does not preclude him from raising this instructional error on appeal, since, having undertaken to charge the jury as to intoxication, the trial court had the affirmative duty to charge the jury correctly. *People v Guillett,* 342 Mich 1; 69 NW2d 140 (1955); see also *Crittle, supra.* We therefore hold that this challenge to the trial court's charge is properly before this Court even in the absence of a timely objection below.

then he had not sufficient capacity to entertain the intent".[2] Thus, the *ratio decidendi* of the *Crittle* holding was that the instruction given therein was not proper even if gauged by the *Roberts* capacity standard.

The present question deals not with this narrow holding of *Crittle,* but rather with what might be called, for lack of a better term, the advisory dicta which followed the narrow holding. The *Crittle* Court, after having already reached the conclusion that the specific instruction as given mandated reversal, continued with "the consideration of some of the confusing rules re jury instruction on the effect of drunkenness in specific intent crimes". After citing some examples wherein the *Roberts* type instruction was followed, the Court continued:

"These various rules all have one thing in common. They refer to a *capacity* standard. Their test is not Justice COOLEY's—'[T]he crime cannot have been committed when the intent *did not exist.'* Their test is rather 'the crime cannot have been committed when the intent *could not exist'.* It is obviously a different standard and not to be followed.

"As a consequence, trial judges would do well to follow Justice COOLEY's language and posit their instructions in terms of whether in the light of defendant's intoxication he in fact had the required specific felonious intent." *Crittle, supra,* 374; 212 NW2d 199–200.

While the COOLEY standard (the intent *did not exist)* is different than the capacity standard (the intent *could not exist),* this is not to say that there is an irreconcilable conflict between the two when

---

[2] See footnote 1 in *Crittle, supra,* 372; 212 NW2d 198–199.

both are found in the same charge.[3] The problem with the capacity standard is not that it is an inaccurate statement of a valid legal conclusion, but rather that standing alone it can, by inference, misdirect the jury's attention from the fact that defendant must in fact have the requisite intent and that if, in fact, defendant for any reason did not have that intent, he must be acquitted. The thrust of *Crittle* was not to formulate an absolute rule that the mentioning of the capacity standard resulted in reversible error, but rather to require that the jury be clearly instructed that it is not enough to merely look to the question of whether the defendant *could not* entertain the intent but rather that they also must determine in light of all the testimony whether defendant *did not* entertain the intent.

Against that standard, would the instruction as given herein confuse the jury as to what they must find in order to acquit? We think not. The trial court clearly indicated that, in order to convict, the jury must find that defendant had the necessary intent, and further indicated that if defendant, because of intoxication or any other reason, did not have the necessary intent he must be acquitted. The jury being clearly informed that they must find that defendant did have the necessary intent, no error resulted from the fact that the trial court also indicated that *if* the jury found defendant did not have by reason of intoxication

---

[3] When stated as it was herein—"if the defendant was so intoxicated as to be incapable of entertaining such intent, he cannot be convicted"—the capacity standard is a valid legal truism, since if defendant is so intoxicated as to lack the capacity to entertain the necessary intent, he, as both a matter of fact and law, *did not* in fact entertain that intent and thus could not be convicted. In other words, if the intent *could not exist,* it necessarily follows that the intent *did not exist,* since a finding of the greater must include the finding of the lesser.

the capacity to form the intent, they must acquit. Thus stated the capacity standard is supplementary to, rather than in conflict with the COOLEY standard, since it merely states the logical conclusion which must follow when the degree of intoxication renders the defendant totally incapable of forming the intent.[4]

Where, as here, the trial court affirmatively instructs the jury that they must address themselves to the question of whether defendant did in fact have the necessary intent, the giving of the so-called "capacity standard" not only does not create any irreconcilable conflict, inconsistency or confusion, but rather it more fully informs the jury of the overall scope of their duty.[5] The instruction as a whole properly informed the jury of the effect of intoxication upon the finding of criminal responsibility. We are not persuaded that the Supreme Court's opinion in *Crittle* mandates reversal, even if we were to determine that *Crittle* should control

---

[4] The COOLEY-*Crittle* instruction, while an eminently correct statement of what the jury must do, *i.e.,* they must find that defendant did in fact have the necessary intent, offers little guidance to the jury in determining exactly what effect intoxication has upon finding that intent. Indeed, COOLEY's statement in *Walker, supra,* makes absolutely no reference to intoxication save for the introductory phrase that "drunkenness cannot excuse a crime". The COOLEY statement is a legal truism applicable to any crime where an intent must be proved, be it a specific intent or merely the necessary general criminal intent, irrespective of whether intoxication is raised as a defense. Perhaps, in the final analysis, the instruction as given by the trial court herein is the preferable approach in that the jury is both clearly informed of the fact that intoxication is an absolute defense if it renders defendant incapable of· forming the necessary intent and yet clearly indicates to the jury that the question of intoxication must also be considered in determining whether defendant, in fact, had the necessary intent.

[5] In most cases it would appear that defendant would welcome a capacity instruction, if coupled with the COOLEY instruction as given here, since typically the assertion of defendant in bringing the defense of intoxication is that he *did not* have the necessary intent because he was so intoxicated that he *could not* form the necessary intent.

cases, such as the instant case, which were tried prior to the decisional date of *Crittle*.[6]

Defendant next contends that the trial court erred in failing to advise the members of the jury that they should refrain from discussing the case with others or between themselves. We have no record of the preliminary instructions to the jury panel and thus are unable to ascertain whether this matter was covered at that time. In 'any event, while it would have been better practice for the trial court to remind the jury not to discuss the case, the touchstone on appeal is whether defendant was thereby prejudiced. Since defendant has failed to show any instances of conversations or prejudice, the question is controlled by the holding in *People v Haugabook,* 23 Mich App 356, 358–359; 178 NW2d 556, 557 (1970):

"While prudence would dictate that the trial judge should remind the jury not to discuss the case, failure to do so does not require reversal absent a showing of prejudice. *People v McIntosh,* 6 Mich App 62; 148 NW2d 220 (1967). The brief, noninflammatory newspaper article attached to defendants' brief does not by itself constitute a showing of prejudice."

---

[6] There would appear to be a real question of whether *Crittle*, to the extent that it appears to repudiate the capacity standard, should be given retrospective application. While *Crittle* relies upon the statement made by Cooley in *People v Walker, supra,* it is questionable that Cooley really intended to formulate a rule different from that in *Roberts v People, supra.* Not only did Cooley, along with Campbell and Graves, sit on both panels, but also Cooley in his opinion in *Walker* indicates that what he was saying therein was fully explained by Justice Christancy in *Roberts.* Whatever Cooley may have meant by his language in *Walker,* it is the rule as stated in *Roberts* which has been treated as controlling for the last century. Thus while *Crittle* used Cooley's language in *Walker* as the vehicle by which to formulate the presently approved instruction on intoxication, *Crittle* marked a change in the established law with respect to what the proper instruction was. It would therefore appear that since the trial courts of this state had every reason to rely on the *Roberts* rule which had been oft repeated as proper, the change in focus evidenced by *Crittle* should be given only prospective application from the decisional date of *Crittle.*

Defendant asserts that reversible error arose by reason of the absence of any explanation for two rather lengthy adjournments during the trial. The first adjournment took place immediately after the jury had been sworn and before any testimony had been taken and ran from January 16, 1973 to January 24, 1973. The second adjournment took place after the people had rested and ran from January 24, 1973 to February 6, 1973.

It is clearly the public policy of this state that criminal trials should not be adjourned or otherwise delayed except for good cause shown. MCLA 768.2; MSA 28.1025. We thus do not condone the manner in which this matter was handled. On the other hand, defendant does not claim that he was denied a speedy trial nor does he claim that there was not, in fact, good cause for the adjournments, rather he complains only that reversal is mandated by the mere failure to have some explanation for the adjournments on the record. Since the record is barren of any objections by defendant or his counsel to the adjournments, and is likewise barren of any indication how he was prejudiced by the adjournments, we find that the technical failure to set forth in the record the reasons for the adjournments does not mandate reversal. It would moreover appear that the reason for the second adjournment was for the purpose of locating and producing an indorsed witness pursuant to the defendant's demand for production of that witness. Defendant having failed to show any miscarriage of justice, we find this issue to be without any substantial merit.

Defendant also argues that the trial court erred by failing to instruct the jury, during his charge with respect to aiding and abetting, that to convict on the theory of aiding and abetting the underly-

ing intent is a necessary element and that intoxication is a defense to that theory. In essence, defendant asserts that the trial court must repeat the general instructions with respect to intent and the defense of intoxication during the aiding and abetting charge. This assertion is patently without merit. Since, as discussed previously, the trial court clearly charged the jury that the defendant must have the necessary intent and that if by reason of intoxication or otherwise defendant did not have the necessary intent he must be acquitted, we can perceive no reason to require the trial court to repeat these instructions in charging as to the theory of aiding and abetting. The charge to the jury when read as a whole clearly informed the jury that in order to convict, either as a principal or an aider, intent was a necessary element and intoxication was a proper defense.

Lastly, defendant argues that the trial court erred in not instructing the jury *sua sponte* as to the lesser included offenses of the charged crime of breaking and entering with intent to commit a larceny. Since the trial court did not affirmatively exclude from the jury's consideration the question of lesser included offenses, no reversible error resulted. *People v Membres,* 34 Mich App 224, 232; 191 NW2d 66, 69 (1971), *lv den* 386 Mich 790 (1972); *People v Kelly,* 51 Mich App 28; 214 NW2d 334 (1973).

Affirmed.

All concurred.