PEOPLE v PARSONS

1. APPEAL AND ERROR—CRIMINAL LAW—INSTRUCTIONS TO JURY—LE-
   GAL NECESSITY—FAILURE TO OBJECT.

   A party may assert for the first time on appeal an objection to an
   erroneous and misleading jury instruction where the instruc-
   tion omitted a legally necessary point.

2. APPEAL AND ERROR—INSTRUCTIONS TO JURY.

   Jury instructions must be read in their entirety to determine if
   they are misleading.

3. CRIMINAL LAW—PROCEDURE—CONSTITUTIONAL LAW—RETROACTIVE
   APPLICATION—FACTORS.

   Three factors traditionally are used to determine whether a new
   rule of constitutional law or criminal procedure is to be given
   retroactive or prospective effect: (1) the purpose of the new rule,
   (2) the general reliance on the old rule, and (3) the effect on the
   administration of justice.

4. CRIMINAL LAW—SPECIFIC-INTENT CRIMES—INSTRUCTIONS TO JURY—
   COOLEY STANDARD—CAPACITY STANDARD.

   Two standards for jury instructions on specific-intent crimes are:
   the Cooley standard, which is that a specific-intent crime
   cannot be committed where the intent did not exist, and the
   capacity standard, which is that a specific-intent crime cannot
   be committed where the intent could not exist.

5. CRIMINAL LAW—SPECIFIC-INTENT CRIME—DEFENSE OF INTOXICATION
   —COOLEY STANDARD—RETROACTIVE APPLICATION.

   Case precedent requiring application of the COOLEY Standard
   when the defense of intoxication has been raised to a specific-
   intent crime is not retroactively applicable where the purpose

REFERENCES FOR POINTS IN HEADNOTES
[1] 75 Am Jur 2d, Trial §§ 166, 167, 708.
[2] 75 Am Jur 2d, Trial § 624.
[3] 21 Am Jur 2d, Criminal Law § 12.
[4] 21 Am Jur 2d, Criminal Law §§ 82, 83.
[5, 6] 21 Am Jur 2d, Criminal Law § 107.
[7–9] 41 Am Jur 2d, Indictments and Information §§ 55, 56, 60.

behind the standard would not be furthered in all cases, the trial courts have relied heavily on prior decisions applying a different standard, and retroactive application would adversely affect the administration of justice.

6. CRIMINAL LAW—SPECIFIC-INTENT CRIME—DEFENSE OF INTOXICATION —CAPACITY STANDARD—INSTRUCTIONS TO JURY—CASE PRECEDENT—RETROACTIVE APPLICATION.

Instructing the jury that a crime cannot be committed where the intent could not exist, when the defense of intoxication was raised to a breaking and entering charge, was not reversible error where the instructions on intoxication were not misleading when read in their entirety, the instructions correctly reflected the prevailing view at the time they were given, and case precedent requiring application of a different standard is not retroactively applicable.

7. WITNESSES—RES GESTAE WITNESS—DOCTORS AS WITNESSES—OBSERVATION OF CRIME—TEST FOR ALCOHOL.

A doctor who treated a defendant was not a res gestae witness to the crime of breaking and entering, in a case in which the defense of intoxication was asserted, where the doctor did not observe the commission of the crime and he did not perform tests to determine the alcohol content of defendant's blood.

8. WITNESSES—RES GESTAE WITNESS—INDORSEMENT—MOTIONS—TIMELINESS—WAIVER.

A defendant's motion for the indorsement of a res gestae witness, made after the prosecution had rested its case, was untimely where the defendant knew of the witness in advance of trial; any right to the production and indorsement of the witness was waived.

9. WITNESSES—RES GESTAE WITNESS—INDORSEMENT—MOTION—DISCRETION.

Denial of a motion for the indorsement of a res gestae witness, made after the prosecution had rested its case, was not an abuse of discretion where an inestimable delay in the trial would have resulted while the witness was located, subpoenaed, and brought to court.

Appeal from Ingham, James T. Kallman, J. Submitted Division 2 January 14, 1975, at Lansing. (Docket No. 19223.) Decided February 24, 1975.

Wayne Parsons was convicted of breaking and entering with intent to commit larceny. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Raymond L. Scodeller,* Prosecuting Attorney, and *Lawrence J. Emery,* Assistant Prosecuting Attorney, for the people.

*Sutton, Mathews & McKelvey,* for defendant.

Before: T. M. BURNS, P. J., and D. E. HOLBROOK and M. J. KELLY, JJ.

M. J. KELLY, J. Defendant was charged with breaking and entering with intent to commit larceny, MCLA 750.110; MSA 28.305. He was convicted of that offense by a jury on September 20, 1973. After being sentenced to a prison term of five to ten years, defendant appealed.

Carl's Market, a small party store in Lansing, was protected by a security system. The system was monitored by Sonitrol Security. At about 1:30 a.m., a Sonitrol employee became aware of suspicious circumstances and called the police. When the police arrived, it was discovered that the glass front door was broken. Defendant was found behind the counter of the store. He was cut and bleeding and was eventually taken to the hospital. There, his lacerations were treated by a Dr. Su.

The elements of breaking and entering were not in dispute at defendant's trial. The crucial issue, as framed by the parties, was whether defendant entertained the specific intent to commit larceny. In support of his theory, defendant testified that he was intoxicated at the time of the offense. He said that he could not remember the events preceding the breaking and entering.

The jury was instructed:

"In this particular case the defense of intoxication has been raised. And, I instruct you [as] follows: whoever [sic] while voluntary drunkness is not an excuse to the commission of a crime, when a certain criminal intent is necessary as in breaking and entering, if the defendant was so intoxicated as to be incapable of entertaining such intent to commit a larceny, and if you find he in fact had no intent to commit a larceny, he cannot be convicted. Voluntary intoxication constitutes no defense to the commission of a crime. It goes to what we generally refer to as the ability to frame an intent. In other words, regarding this, ladies and gentlemen of the jury, I further instruct you that intoxication of the defendant is no excuse for the act, unless you find that he was so overcome with liquor or alcoholic beverages that he was not conscious of what he was doing or did not know why he was doing it."

It is asserted, for the first time on appeal, that the jury instruction on intoxication was reversibly misleading and erroneous in light of *People v Crittle,* 390 Mich 367; 212 NW2d 196 (1973). There is no claim that the charge merely omitted a pertinent though not legally necessary point. Rather, it is claimed that the charge was erroneous and misleading. Therefore, the issue is properly before us. *People v Guillett,* 342 Mich 1, 7; 69 NW2d 140, 143 (1955), *People v Scott,* 55 Mich App 739, 742, fn 1; 223 NW2d 330, 332 (1974).

The charge contains the "COOLEY standard", that, "the crime cannot have been committed where the intent *did not exist".* 390 Mich 367, 374. It also contains the "capacity standard", that, "the crime cannot have been committed when the intent *could not exist".* 390 Mich 367, 374. The instant charge also embodies the holding of *Roberts v People,* 19 Mich 401, 418–419 (1870), that

" * * * if * * * he was not conscious of what he was doing, [or if he] * * * did not know why he was doing it * * * then he had not sufficient capacity to entertain the intent * * * ".

Were this the entirety of the jury instruction on point, we would agree that the charge was misleading. However, to determine if they are misleading, jury instructions must be read in their entirety. *People v Harper,* 43 Mich App 500, 504; 204 NW2d 263, 266 (1972), *lv den,* 389 Mich 759 (1973), *People v Hooper,* 50 Mich App 186, 192; 212 NW2d 786, 789 (1973), *lv den,* 391 Mich 808 (1974), *People v Hodo,* 51 Mich App 628, 636; 215 NW2d 733, 738 (1974).

The trial judge had previously and correctly instructed the jury that they would have to find the element of larcenous intent to convict. A proper instruction was given on the prosecution's burden of proof. When the intoxication instruction was given defense counsel alertly objected that it was error to charge that "voluntary intoxication is no defense * * * ". The trial judge then gave the following instructions on suggestion of defense counsel:

"All right ladies and gentlemen * * * while you were out, we clarified three things * * * [The second is] that voluntary drunkenness is no defense unless it negates the defendant's ability to form an intent."

We thus face the same fact situation as that confronting the court in *People v Scott, supra.* The *Scott* Court said, and we agree (55 Mich App 739, 744–745):

"The thrust of *Crittle* was not to formulate an absolute rule that the mentioning of the capacity standard resulted in reversible error, but rather to require that

the jury be clearly instructed that it is not enough to merely look to the question of whether the defendant *could not* entertain the intent but rather that they also must determine in light of all the testimony whether defendant *did not* entertain the intent.

"Against that standard, would the instruction as given herein confuse the jury as to what they must find in order to acquit? We think not. The trial court clearly indicated that, in order to convict, the jury must find that defendant had the necessary intent, and further indicated that if defendant, because of intoxication or any other reason, did not have the necessary intent he must be acquitted. The jury being clearly informed that they must find that defendant did have the necessary intent, no error resulted from the fact that the trial court also indicated that *if* the jury found defendant did not have by reason of intoxication the capacity to form the intent, they must acquit. Thus stated the capacity standard is supplementary to, rather than in conflict with the COOLEY standard, since it merely states the logical conclusion which must follow when the degree of intoxication renders the defendant totally incapable of forming the intent.

"Where, as here, the trial court affirmatively instructs the jury that they must address themselves to the question of whether defendant did in fact have the necessary intent, the giving of the so-called 'capacity standard' not only does not create any irreconcilable conflict, inconsistency or confusion, but rather it more fully informs the jury of the overall scope of their duty. The instruction as a whole properly informed the jury of the effect of intoxication upon the finding of criminal responsibility."

It is claimed that the jury charge contained an erroneous statement of law inasmuch as its thrust was to present to the jury the capacity standard. As noted in *Scott,* the two standards are not entirely repugnant. Moreover, the error in the *Crittle* case was that the instruction there given was erroneous under *either* the "capacity" or

"Cooley" standard. We are asked to elevate to a holding the following *Crittle* dicta that a "capacity" instruction is reversibly erroneous:

"It [capacity] is obviously a different standard and not to be followed.

"As a consequence, trial judges would do well to follow Justice Cooley's language and posit their instructions in terms of whether in the light of defendant's intoxication he in fact had the required specific felonious intent." 390 Mich 367, 374.

Even if we were to interpret *Crittle* as requiring, upon pain of reversal, that the trial judge's instructions focus on the Cooley standard, defendant would not be entitled to a new trial. Defendant was convicted before the decisional date in *Crittle,* hence he would be entitled to relief only if the *Crittle* holding was meant to be given retroactive application. The language used by the Supreme Court suggests that the Court did not intend retroactive application. There are three factors traditionally used in deciding whether a new rule of constitutional law or criminal procedure is to be given retroactive or prospective effect; *Linkletter v Walker,* 381 US 618; 85 S Ct 1731; 14 L Ed 2d 601 (1965), and *People v Hampton,* 384 Mich 669; 187 NW2d 404 (1971). They are:

"(1) The purpose of the new rule; (2) the general reliance on the old rule; and (3) the effect on the administration of justice." 384 Mich 669, 674.

The purpose of the new *Crittle* rule is to assure that one having no criminal intent not be convicted because the jury is erroneously instructed that to acquit it must find that defendant was too intoxicated to have *any* intent. In *Crittle* defend-

ant contended that, because of intoxication, he formed the intent to pursue what, in retrospect, was a humorless April Fool's joke. In the present case, defendant, unlike *Crittle,* claimed to be too intoxicated to form *any* intent. It is apparent that the purpose behind the *Crittle* ruling would not be served by reversal in the instant case.

"The second and third factors can be dealt with together, because the amount of past reliance will often have a profound effect upon the administration of justice." 384 Mich 669, 677.

On the issue of past reliance, the trial courts of this state have certainly relied heavily on cases adopting the capacity standard. "Capacity" cases include *People v Haley,* 48 Mich 495; 12 NW 671 (1882), *People v Hearn,* 354 Mich 468; 93 NW2d 302 (1958), and *Roberts, supra.* The reliance by trial courts on these prior decisions of our Supreme Court is reasonable and worthy of serious consideration. We believe that giving retroactive effect to *Crittle* would adversely affect the administration of justice in this state.

When read in its entirety the jury charge on intoxication is not misleading. The charge correctly reflected the prevailing view at the time it was given. No reversible error resulted from the instructions.

Defendant also contends that the trial judge erred in not requiring the prosecution to endorse and present Dr. Su as a res gestae witness as required by MCLA 767.40; MSA 28.980. *People v Harrison,* 44 Mich App 578; 205 NW2d 900 (1973), reveals the expansive definition given the term res gestae witness in this state; it does not appear that Dr. Su was such a witness. He did not observe defendant at the time the crime was committed

but only some time later. He performed no tests to determine the alcohol content of defendant's blood.

Even if, *arguendo,* Dr. Su was a res gestae witness, there was no reversible error. Defendant knew in advance of trial that he had received medical treatment. His motion for the endorsement of the treating doctor came only after the prosecution had rested its case. The motion was untimely. *People v Willie Jones,* 38 Mich App 512, 516; 196 NW2d 817, 819 (1972), *lv den,* 388 Mich 792 (1972). By inexcusably waiting until the completion of the prosecution's case, defendant must be deemed to have waived any right to the endorsement and production of Dr. Su.

We find no abuse of the trial court's inherent discretion to grant or deny a belated motion to endorse by either party. *People v Hodges,* 34 Mich App 90; 190 NW2d 703 (1971), *lv den,* 387 Mich 759 (1972), *People v Harrison,* 44 Mich App 578, 587; 205 NW2d 900, 906 (1973). To have granted the motion would have entailed an inestimable delay in the trial while the doctor was located, subpoenaed and brought to court.

Affirmed.