PEOPLE v CHAMBERS #2

Opinion of the Court

1. Criminal Law—Defenses—Drunkenness—Specific Intent—Element of Crime.

Drunkenness cannot excuse a crime, but when a certain intent is a necessary element in a crime, the crime cannot have been committed where the intent did not exist; if the defendant, for any reason whatever, indulged no such intent the crime cannot have been committed.

2. Appeal and Error—Rule of Law—Retroactive Application—Prospective Application.

Three traditional factors to determine whether a new rule of law should be applied retroactively or prospectively are: (1) the purpose of the new rule; (2) the general reliance on the old rule; (3) the effect on the administration of justice.

3. Criminal Law—Specific Intent—Drunkenness—Case Precedent—Retroactive Application.

A Supreme Court decision that drunkenness excuses a crime of specific intent only where the specific intent did not exist should be applied retroactively to those cases not finalized as of the decisional date.

4. Robbery—Armed Robbery—Defenses—Drunkenness—Instructions to Jury—Specific Intent—Failure to Object.

An instruction to the jury that drunkenness excuses the crime of armed robbery only where the defendant did not have the specific intent to rob due to his drunkenness is erroneous and is reversible error, even though the defendant failed to object to the instruction.

Dissent by R. M. Maher, J.

5. Criminal Law—Specific Intent—Defenses—Drunkenness—Prospective Application.

*A Supreme Court decision that drunkenness excuses a crime of*

References for Points in Headnotes
[1, 3–5] 21 Am Jur 2d, Criminal Law § 107.
[2] 4 Am Jur 2d, Appeal and Error § 76.

*specific intent only where the specific intent did not exist
should be applied prospectively.*

Appeal from Wayne, James N. Canham, J. Submitted June 6, 1975, at Detroit. (Docket No. 18586.) Decided September 22, 1975.

Robert Chambers was convicted of armed robbery. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals, and *Thomas M. Khalil,* Assistant Prosecuting Attorney, for the people.

*Roger L. Wotila,* Assistant State Appellate Defender, for defendant.

Before: DANHOF, P. J., and R. B. BURNS and R. M. MAHER, JJ.

DANHOF, P. J. Defendant Robert Allen Chambers was convicted by a jury on May 9, 1973 of armed robbery. MCLA 750.529; MSA 28.797. On August 24, 1973, he was sentenced to serve 20 to 40 years in prison. The defendant appeals of right. We reverse and remand for trial.

The record indicates that the defendant entered Maury's Bar in Allen Park, Michigan shortly after 2 a.m. on December 8, 1972. He ordered and drank some beer. The defendant left, but came back with a single shot shotgun. He took money from cash drawers located in the office and placed it in his pockets. The defendant then discharged the shotgun. Thereafter, an employee of the bar jumped

the defendant and struggled with him until the police arrived.

At trial, the defendant relied upon intoxication as his defense.

As to the intoxication defense, the trial court initially instructed the jury as follows:

"On the question of specific intent, Ladies and Gentlemen of the Jury, since I have already charged that robbery is a specific intent crime, I charge you that if you find that the defendant's mental faculties were so far overcome by intoxication that he was not conscious of what he was doing or he did not know what he was doing and he could not entertain the requisite specific intent, he therefore could not be guilty of robbery. It is for you the jury to determine exactly how far if any the mental faculties of the accused were impaired. If he was conscious of what he was doing is for you, the jury, to determine."

However, during deliberation, the jury requested the trial court to again define the charges. The additional instructions read as to intoxication:

"The defendant's defense is that he was so intoxicated that he could not form the specific intent to rob."

No objection to these instructions was made to the lower court by the defendant.

The first issue raised on appeal is whether the trial court committed reversible error by improperly instructing the jury on intoxication under the capacity standard rather than the COOLEY standard. As this issue is dispositive of the case on appeal, this Court will not address itself to the other issues raised.

The Supreme Court in *People v Crittle,* 390 Mich 367, 373; 212 NW2d 196 (1973), stated the applicable test to determine whether the accused

has the specific requisite intent by quoting from Justice COOLEY's opinion in *People v Walker,* 38 Mich 156, 158 (1878):

" 'While it is true that drunkenness cannot excuse a crime, it is equally true that when a certain intent is a necessary element in a crime, the crime cannot have been committed when the intent did not exist * * * if the defendant, for any reason whatever, indulged no such intent, the crime cannot have been committed.' "

The Court went on to distinguish between the COOLEY test and the capacity test (373–374):

"We come now to the consideration of some of the confusing rules re jury instruction on the effect of drunkenness in specific intent crimes. These rules are expressed in such language as:

" '[T]oo drunk to be capable of forming the statutory intent' *(People v Haley,* 48 Mich 495, 497; 12 NW 671 [1882]);

"So intoxicated that they 'did not know what they were doing' *(People v Hearn,* 354 Mich 568, 470 *[sic];* 93 NW2d 302 [1958]);

" 'So intoxicated * * * that he would be incapable of forming an intent * * * and did not know what he was doing' *(People v Stram,* 40 Mich App 249, 252; 198 NW2d 753 [1972]); or

" '[S]o far overcome by the intoxication, that he was not conscious of what he was doing, or if he did know what he was doing, but did not know why he was doing it' *(Roberts v People,* 19 Mich 401 [1870]).

"These various rules all have one thing in common. They refer to a *capacity* standard. Their test is not Justice COOLEY's— '[T]he crime cannot have been committed when the intent *did not exist.'* Their test is rather 'the crime cannot have been committed when the intent *could not exist'.* It is obviously a different standard and not to be followed.

"As a consequence, trial judges would do well to follow Justice COOLEY's language and posit their in-

structions in terms of whether in the light of defendant's intoxication he in fact had the required specific felonious intent."

The trial court in the instant case instructed the jury on intoxication under the capacity test. However, whether this is reversible error under *Crittle* depends upon whether *Crittle* is to be given prospective or retroactive effect.

We are not unaware of the recent decision of *People v Parsons,* 59 Mich App 79; 228 NW2d 852 (1975). In *Parsons,* the Court determined that *Crittle* was not intended to apply retroactively to a defendant who was convicted before the decisional date in *Crittle.* With this determination, we respectfully disagree.

Three traditional factors to determine whether a law should be applied retroactively or prospectively are: (1) the purpose of the new rule; (2) the general reliance on the old rule; and (3) the effect on the administration of justice. *People v Hampton,* 384 Mich 669, 674; 187 NW2d 404 (1971), and *Linkletter v Walker,* 381 US 618; 85 S Ct 1731; 14 L Ed 2d 601 (1965). Additionally, *Linkletter v Walker,* 381 US 618, 621–622, discusses recognized cutoff points for the application of a new ruling:

"Initially we must consider the term 'retrospective' for the purposes of our opinion. A ruling which is purely prospective does not apply even to the parties before the court. * * * However, we are not here concerned with pure prospectivity since we applied the rule announced in *Mapp* to reverse Miss Mapp's conviction. That decision has also been applied to cases still pending on direct review at the time it was rendered. Therefore, in this case, we are concerned only with whether the exclusionary principle enunciated in *Mapp* applies to state court convictions which had become final before rendition of our opinion."

The *Linkletter* court defines *final* in footnote 5, *supra* at 622:

"By final we mean where the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari had elapsed before our decision in *Mapp v Ohio* [367 US 643; 81 S Ct 1684; 6 L Ed 2d 1081 (1961)]."

Even though it was a nonjury case, *People v Taskila,* 391 Mich 815 (1974), remanded the case to the circuit court for reconsideration in light of *Crittle. Taskila* was on appeal at the time *Crittle* was decided. See *People v Taskila,* 50 Mich App 746; 213 NW2d 760 (1973). Further, the recent case of *People v Watson,* 59 Mich App 299; 229 NW2d 424 (1975), applied the *Crittle* ruling to that case, even though the defendant had been convicted prior to the decisional date in *Crittle.* However, the conviction in *Watson* had not become final.

The first of the three factors enunciated in *People v Hampton, supra,* is particularly strong in the instant case. The purpose of the ruling in *Crittle* is to point out the correct instruction on intoxication in relation to a requisite element of the crime, specific intent, without which there is no crime. This instruction has a direct impact on the guilt or innocence of the defendant. However, as was pointed out in *Crittle,* there has been general reliance by the trial courts of this state on the capacity standard for over 100 years. Finally, the effect on the administration of justice must be considered. To make *Crittle* retroactive to cases already finalized "would tax the administration of justice to the utmost". *Linkletter v Walker, supra,* at 637. Therefore, in consideration of these factors, the application of *Crittle* should not be purely

retroactive nor purely prospective, but rather ret-roactive to those cases not yet finalized.

The defendant in the instant case was convicted on May 9, 1973. He now appeals of right to this Court. The decisional date of *Crittle* was Novem-ber 21, 1973. The conviction of the defendant had not yet become final. Therefore, the defendant is entitled to the benefit of the *Crittle* ruling.

In line with *People v Crittle, supra,* and *People v Watson, supra,* we hold that the trial court committed reversible error in not properly in-structing the jury under the COOLEY standard, even though the defendant failed to object in the prior proceedings.

Reversed and remanded for trial.

R. B. BURNS, J., concurred.

R. M. MAHER, J. *(dissenting).* Whether the Su-preme Court's holding in *People v Crittle,* 390 Mich 367; 212 NW2d 196 (1973), is to be given retroactive application is still an open question. See *People v Rich,* 394 Mich 804 (1975), *People v Elmer D. Robinson,* 394 Mich 804 (1975). The language in *People v Crittle, supra,* 374, suggests prospective application as do the traditional fac-tors used in deciding the question of retroactivity. See *People v Parsons,* 59 Mich App 79; 228 NW2d 852 (1975). See also, *People v Scott,* 55 Mich App 739, 746, fn 6; 223 NW2d 330 (1974). I would apply *Crittle* prospectively.