PEOPLE v MILLER

1. HOMICIDE—SECOND-DEGREE MURDER—SPECIFIC INTENT CRIMES—DE-
   FENSES—INTOXICATION.

    The defense of intoxication may be interposed only when a
    defendant is charged with a specific intent crime and, since
    second-degree murder is not a specific intent crime, voluntary
    intoxication is no defense to it.

2. HOMICIDE—MURDER—VOLUNTARY MANSLAUGHTER—INTENT—MAL-
   ICE—PROVOCATION—TESTIMONY OF DEFENDANT.

    Voluntary manslaughter includes the intent to take a life but
    under provocation which is serious enough to deprive the
    killing of its malicious character; the provocation necessary to
    reduce a homicide from murder to manslaughter must have
    been sufficient to cause the respondent to act rashly and
    without due deliberation and reflection, and from passion
    rather than judgment; a jury instruction on voluntary man-
    slaughter is not required where a defendant's own testimony
    excludes such a provocation.

3. HOMICIDE—INVOLUNTARY MANSLAUGHTER—ELEMENTS OF CRIME.

    Involuntary manslaughter is the killing of another without mal-
    ice and unintentionally but in doing some unlawful act not
    amounting to a felony nor naturally tending to cause death or
    great bodily harm, or in negligently doing some act lawful in
    itself, or by the negligent omission to perform a legal duty.

4. HOMICIDE—INVOLUNTARY MANSLAUGHTER—INSTRUCTIONS TO JURY
   —WITNESSES—DEFENDANT AS WITNESS—PREJUDICE.

    No prejudice to a defendant accused of second-degree murder
    resulted from the failure of the trial court to instruct the jury
    on involuntary manslaughter where the defendant had testified

REFERENCES FOR POINTS IN HEADNOTES

[1] 40 Am Jur 2d, Homicide §§ 128, 129, 131.
Modern status of the rules as to voluntary intoxication as defense
to criminal charge. 8 ALR3d 1236.
[2] 40 Am Jur 2d, Homicide § 56 *et seq.*
[3] 40 Am Jur 2d, Homicide § 70.
[4] 40 Am Jur 2d, Homicide §§ 470, 532.

and had the jury believed the defendant's version of the killing they, under the instructions, would have been obliged to return a verdict of not guilty, but had the court instructed on involuntary manslaughter and had the jury believed defendant's version of the killing they would have been obliged to return a verdict of manslaughter.

Appeal from Wayne, John D. O'Hair, J. Submitted June 10, 1975, at Detroit. (Docket No. 20316.) Decided October 13, 1975. Leave to appeal applied for.

Harold J. Miller was convicted of second-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals, and *Raymond P. Walsh,* Assistant Prosecuting Attorney, for the people.

*Robert M. Filiatrault,* for defendant on appeal.

Before: BRONSON, P. J., and V. J. BRENNAN and D. E. HOLBROOK, JR., JJ.

D. E. HOLBROOK, JR., J. Defendant was originally charged with first-degree murder arising out of the shooting death of one Mary Juanita Cloyd. MCLA 750.316; MSA 28.548. Pursuant to court order the information was subsequently amended to charge murder in the second degree. Defendant was tried by a jury and convicted of the amended charge. Sentenced to imprisonment for a term of not less than 25 nor more than 40 years, defendant appeals as of right.

Prior to the shooting defendant and decedent had been lovers, having lived together in decedent's apartment from July of 1972 to April of

1973, when defendant moved out and returned to London, Ontario.

On the morning of May 22, 1973, defendant decided to go from his home in London, Ontario, to Westland so as to return to the decedent a suitcase, keys to her apartment and a set of keys to her car and pick up some of his clothes. He also was desirous of returning certain tools to his brother-in-law. Before departing London defendant drank beer. En route to Westland defendant stopped at Port Huron where he purchased more beer which he drank on the way to his brother-in-law's home. Upon his arrival at his brother-in-law's home he left his wife, Carol, and proceeded to Mary Juanita Cloyd's apartment. Not finding her home he entered decedent's apartment with the keys he had planned to return. Deciding to wait for her return defendant drank more beer while in her apartment. Some time thereafter he left the apartment and looked for her at a launderette where she was accustomed to doing her laundry and at her mother's house. She was not at either place. Defendant then proceeded to the home of either his brother-in-law or his brother-in-law's brother, he could not remember which, where he proceeded to drink more beer.

Later the same day and some time during the evening hours defendant again went to the apartment of Mary Juanita Cloyd. She was home on this occasion and he entered and they talked. Defendant testified that he returned her keys to the apartment, the keys to her automobile and her suitcase. He further testified that he requested his clothing and a brown envelope containing certain papers which he had left behind. According to the defendant Miss Cloyd advised the defendant that she had moved the location of such so that he

would be unable to pick them up without conversing with her.

During the course of their conversation an argument ensued. Defendant, according to his testimony, got up to leave. At this point the decedent blocked the doorway between the kitchen and dining room insisting they talk further. Defendant then sat down upon a chair and bruised himself with a pistol which he had previously found in the apartment and subsequently placed in his rear pocket. Defendant stated it was at this point he removed the pistol from his pocket and placed it on the table. The parties continued to converse and further arguments ensued. According to the defendant the decedent picked up the pistol from the table. There is no evidence, however, tending to show in what manner she held it. Upon her picking up the pistol defendant, who was angry, snatched the pistol from her hand. It was at this point, he presumed, the gun went off, resulting in decedent's death. Defendant further related to the jury that the sight of blood has a special effect on him causing him not to remember his actions. He claims that the sight of blood, on this particular occasion, caused him to remember nothing thereafter until he found himself in a motel room in Windsor, Ontario, on the morning of May 23, 1973. Defendant testified that on the day in question he had drunk enough to be drunk at the time of the alleged offense. Defendant further testified that at no time did he intend to kill Mary Juanita Cloyd or cause her any harm. On May 25, 1973, defendant voluntarily surrendered to the London, Ontario, police.

On appeal defendant claims that the trial court committed reversible error by not instructing the jury on intoxication so as to reduce the crime from

second degree murder to voluntary manslaughter. We disagree. The defense of intoxication may only be interposed when the defendant is charged with a specific intent crime. *People v Crittle,* 390 Mich 367; 212 NW2d 196 (1973), *People v Kelley,* 21 Mich App 612; 176 NW2d 435 (1970). Second-degree murder is not a specific intent crime and therefore voluntary intoxication may not be interposed as a defense. *People v Rufus Williams,* 23 Mich App 459; 179 NW2d 48 (1970), *aff'd* 386 Mich 277 (1971), *People v Jones,* 45 Mich App 373; 206 NW2d 453 (1973). We find no error in the court's failure to instruct on voluntary intoxication since we hold second-degree murder not to be a specific intent crime.

Next defendant contends that the trial court erred in refusing to instruct the jury as to the lesser-included offenses of voluntary and involuntary manslaughter and by affirmatively limiting the jury in their deliberations to two possible verdicts.

At the conclusion of trial, defendant in his request to charge, requested an instruction on both voluntary and involuntary manslaughter. The court did not honor such request and instructed the jury as to two possible verdicts; guilty of murder in the second degree or not guilty. The court also instructed the jury on both accident and self-defense and further instructed the jury that the burden of proving the absence thereof was on the people.

In voluntary manslaughter there is an intent to take life, under provocation which is serious enough to deprive the killing of its malicious character. See 3 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 1664, p 2006. The provocation necessary to reduce a crime from murder to

manslaughter must, by the laws of the human mind, have been sufficient to cause the respondent to act rashly and without due deliberation and reflection, and from passion rather than judgment. Again see 3 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 1665, p 2007.

Here the defendant affirmatively testified that he did not intend to kill or hurt the deceased. Voluntary manslaughter is therefore inconsistent with his own testimony. Further, we conclude that the circumstances leading up to the shooting of the deceased were not sufficient to constitute provocation serious enough to deprive the killing of its malicious character or to cause the defendant to act rashly and without due deliberation and reflection or from passion rather than judgment. The court, therefore, did not commit error in failing to instruct on voluntary manslaughter.

We need not decide whether the trial court erred in failing to instruct the jury on involuntary manslaughter for assuming, arguendo, that it did, such error would be harmless beyond a reasonable doubt. Our reasons for so holding are as follows:

Involuntary manslaughter is (1) the killing of another without malice and unintentionally, but in doing some unlawful act not amounting to a felony *nor naturally tending to cause death or great bodily harm;* or in (2) negligently doing some act lawful in itself; or (3) by the negligent omission to perform a legal duty. See *People v Ryczek,* 224 Mich 106, 110; 194 NW 609 (1923), *People v Townes,* 391 Mich 578, 590; 218 NW2d 136 (1974). Here there is no evidence that defendant killed the deceased by the negligent omission to perform a legal duty. At this point we should point out that following the commission of the alleged offense defendant allegedly told four persons that he had shot and killed the deceased.

With respect to the first and second forms of involuntary manslaughter, stated above, we again point out that the court instructed the jury on both accident and self-defense. In instructing the jury on accident the court defined accident as:

"A happening by chance, something out of the usual course of things that was not intended and was not expected. *Something* of a fortuitous character, *not anticipated and not naturally to be expected."* (Emphasis supplied.)

While perhaps the jury could have found (1) that the defendant, at the time of the shooting, was performing an unlawful act not amounting to a felony, or (2) that decedent's death resulted from defendant negligently doing some act lawful in itself, the court's instructions on accident and self-defense would render such findings of little benefit to the defendant.

Due to the court's instructions on accident, implicit in the jury's verdict is a finding by the jury that the result of defendant's actions was both anticipated and naturally to be expected. This would preclude a finding of involuntary manslaughter on the first theory mentioned above since such a finding is tantamount to determining that the acts of the defendant naturally tended to cause death or great bodily harm. Further implicit in the jury's verdict, due to the court's instructions on self-defense, is a finding by the jury that defendant was not performing a lawful act in a negligent manner.

We find no prejudice resulting to the defendant since had the jury believed defendant's version of the incident they, under the instructions, would have been obliged to return a verdict of not guilty.

Had the court instructed on involuntary manslaughter and had the jury believed defendant's version they would have been obliged to return a verdict of manslaughter. Error, if any, inured to defendant's benefit and therefore would be harmless beyond a reasonable doubt.

Having reviewed defendant's final assertion of error, we find that the issue therein raised has previously been decided adversely to defendant's claim in *People v Milton*, 393 Mich 234; 224 NW2d 266 (1974).

Affirmed.