PEOPLE v LUTZKE

OPINION OF THE COURT

1. CRIMINAL LAW—APPEAL AND ERROR—PRELIMINARY EXAMINATION.
   Alleged error at a preliminary examination will not be considered on appeal where it was not raised prior to or at trial.

2. HOMICIDE—MURDER—PREMEDITATION.
   The actions of a defendant charged with murder, who had returned to a bar with a weapon an hour after he was refused service, could support an inference of premeditation.

3. CRIMINAL LAW—INSTRUCTIONS TO JURY—DEFENSE OF INTOXICATION—FIRST-DEGREE MURDER—ASSAULT—GREAT BODILY HARM—FAILURE TO OBJECT.
   An alleged failure to instruct the jury on the defense of intoxication to first-degree murder and assault with intent to do great bodily harm less than murder is not grounds for reversal where an instruction on the defense of intoxication to a lesser included charge was given, this instruction applied to all charges when the instructions are read as a whole, and no objection was made.

4. CRIMINAL LAW—DEFENSE OF INTOXICATION—CAPACITY STANDARDS—COOLEY STANDARD— INSTRUCTIONS TO JURY.
   An instruction to a jury on the defense of intoxication which contained both the capacity standard (whether the requisite intent *could not* exist) and the COOLEY standard (whether the

REFERENCES FOR POINTS IN HEADNOTES
[1] 4 Am Jur 2d, Appeal and Error § 79.
[2] 40 Am Jur 2d, Homicide §§ 246, 263.
[3, 4, 8–10] 45 Am Jur 2d, Intoxicating Liquors §§ 402, 403.
[5] 21 Am Jur 2d, Criminal Law § 107.
[6] 21 Am Jur 2d, Criminal Law §§ 82, 83, 110.
[7] 40 Am Jur 2d, Homicide § 44.
[11] 75 Am Jur 2d, Trial §§ 759, 765.
[12] 52 Am Jur 2d, Malice § 6.
[13] 21 Am Jur 2d, Criminal Law §§ 345–348.
   81 Am Jur 2d, Witnesses § 464.

requisite intent *did not* exist) is not reversibly erroneous where in the instruction the capacity standard was supplementary to, rather than in conflict with, the COOLEY standard and the instruction as a whole properly informed the jury of the effect intoxication should have upon a finding of criminal responsibility.

DISSENT BY ALLEN, J.

5. CRIMINAL LAW—DEFENSE OF INTOXICATION—SPECIFIC-INTENT CRIMES.

An accused may interpose the defense of intoxication where the crime charged requires proof of a specific intent.

6. ASSAULT AND BATTERY—GREAT BODILY HARM—LESS THAN MURDER —SPECIFIC-INTENT CRIMES.

Assault with intent to do great bodily harm less than murder is a specific-intent crime.

7. MURDER—FIRST-DEGREE MURDER—SPECIFIC-INTENT CRIMES.

First-degree murder is a specific-intent crime.

8. CRIMINAL LAW—INSTRUCTIONS TO JURY—DEFENSE OF INTOXICATION—FIRST-DEGREE MURDER—ASSAULT—GREAT BODILY HARM —LESS THAN MURDER.

Failure to instruct the jury that voluntary intoxication may negate the intent required for first-degree murder and assault with intent to commit great bodily harm less than murder was error, and even though an instruction was given on the defense of intoxication to assault with intent to commit murder, this instruction cannot be read as applying to the other charges.

9. CRIMINAL LAW—APPEAL AND ERROR—FAILURE TO OBJECT—INSTRUCTIONS TO JURY—DEFENSE OF INTOXICATION.

Failure to object to an erroneous instruction on the defense of intoxication does not preclude a defendant from raising the issue on appeal.

10. CRIMINAL LAW—DEFENSE OF INTOXICATION—CAPACITY STANDARDS —COOLEY STANDARD—INSTRUCTIONS TO JURY.

An instruction to a jury on the defense of intoxication which incorporates both the capacity and COOLEY standards is reversibly erroneous where the instruction predominantly stresses the improper capacity standard; an instruction containing both standards may be proper where it clearly and predominantly emphasizes the COOLEY standard.

11. CRIMINAL LAW—INTENT—INFERENCES—PRESUMPTIONS—INSTRUC-
TIONS TO JURY.

   *An instruction to a jury that it may* infer *that a defendant
   intended the natural consequences of his acts, if the jury
   believes the evidence supports the inference, is proper; how-
   ever, a trial judge should avoid instructing that the law pre-
   sumes* that every person intends the natural and usual conse-
   quences of his own voluntary acts.

12. CRIMINAL LAW—INFERENCES—MALICE—DEADLY WEAPONS.

   *A jury may infer malice from the use of a deadly weapon, but
   should not be required to do so.*

13. CRIMINAL LAW—EVIDENCE—ANONYMOUS PHONE CALLS—RIGHT TO
CONFRONT WITNESSES.

   *Testimony of a police officer as to the contents of an anonymous
   phone call which identified a defendant as a suspect denies the
   defendant his right to confront witnesses against him.*

Appeal from Arenac, Carl L. Horn, J. Submitted
February 4, 1976, at Grand Rapids. (Docket Nos.
22044, 22045.) Decided March 23, 1976. Leave to
appeal applied for.

William H. Lutzke, Jr., was convicted of second-
degree murder and assault with intent to commit
great bodily harm less than murder. Defendant
appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, and *Norman
Ehrnst,* Prosecuting Attorney (Prosecuting Attor-
neys Appellate Service, *Keith D. Roberts,* Assist-
ant Attorney General), for the people.

*Sharon M. Sloan* and *Lawrence Baron,* Assistant
State Appellate Defenders, for defendant.

Before: QUINN, P. J., and J. H. GILLIS and ALLEN,
JJ.

QUINN, P. J. Charged with first-degree murder,
MCLA 750.316; MSA 28.548, and assault with

intent to commit murder, MCLA 750.83; MSA 28.278, the jury convicted defendant of second-degree murder, MCLA 750.317; MSA 28.549, and assault with intent to commit great bodily harm less than murder, MCLA 750.84; MSA 28.279. He was sentenced and he appeals.

Shortly after 8 p.m. on February 26, 1974, defendant entered the Alger Bar in Arenac County. Due to the erratic walking of defendant, the bartender informed defendant that he would not be served. Defendant said nothing and left. An hour later defendant returned at which time the bartender and one customer were the only persons in the bar. After defendant had walked several feet toward the bar, the bartender again informed defendant he would not be served. Defendant walked back to the door, opened it, turned, pointed a gun at the bartender's direction and fired two shots. One shot fatally wounded the customer. The bartender ran after defendant and tried to pull him out of his vehicle. When he observed defendant reach for an object, he ran to the rear of the vehicle and then heard two shots. The bartender returned to the bar and called the police. At trial, the defendant testified that he was present at the bar and had fired shots. The defense was intoxication.

Defendant's first issue alleges lack of proof of premeditation and asserts as error (a) his bindover on an open charge of murder, and (b) denial of his motion for directed verdict on the first-degree murder charge. As to (a), it was not raised prior to or at trial and cannot be raised for the first time on appeal, *People v Miller,* 62 Mich App 495; 233 NW2d 629 (1975). As to (b), defendant's actions, his return a second time after an hour lapse with a weapon could support an inference of

premeditation, *People v Juniel,* 62 Mich App 529; 233 NW2d 635 (1975).

Second, defendant claims error in the instruction on intoxication because the trial judge failed to instruct that intoxication was a defense to first-degree murder and to assault with intent to do great bodily harm less than murder. When the instructions are read as a whole, the instruction on intoxication as a defense applied to all charges on which the jury was instructed, and no objection was made to the instruction given. We find no error.

We consider defendant's third issue to be frivolous. There was evidence to support both charges. Under *People v White,* 390 Mich 245; 212 NW2d 222 (1973), those charges had to be joined in one trial.

Defendant contends that the instruction on intoxication violates *People v Crittle,* 390 Mich 367, 212 NW2d 196 (1973). The instruction complained about is very similar to the instruction reviewed in *People v Scott,* 55 Mich App 739; 223 NW2d 330 (1974), namely: a mixture of the capacity standard and the standard required by *Crittle, supra.* The *Scott, supra,* analysis of this question is sound and we adopt it as dispositive of this issue. No error occurred. We note again that no objection was made below to this instruction.

The remaining issues raised on appeal either have not been properly preserved for review, merit no discussion, or their resolution is unnecessary to the proper disposition of this case.

Affirmed.

J. H. GILLIS, J., concurred.

ALLEN, J. *(dissenting).* I respectfully dissent from

the decision reached by my learned colleagues, since it is apparent that errors took place at defendant's trial which require reversal.

The following offenses were submitted to the jury: first-degree murder, second-degree murder, manslaughter, assault with intent to commit murder, assault with intent to commit great bodily harm less than murder, felonious assault and simple assault. The majority correctly points out that the defense was intoxication. The trial court charge on intoxication reads:

"In determining whether the assault was committed with intent to murder, it is material for the jury to inquire into the defendant's mental faculties, and whether they were so far overcome by the effects of intoxication as to render him incapable of entertaining that intent. If his mental faculties were so far overcome by the intoxication that he was not conscious of what he was doing, or, if he did know what he was doing but did not know why he was doing it, or that his actions and the means he was using were naturally adapted or calculated to endanger life or produce death, then he had not sufficient capacity to entertain the intent, and in that event you jurors cannot infer that intent from his acts. But if he knew what he was doing, why he was doing it, and that his actions with the means he was using were naturally adapted or likely to kill, then *the intent to kill* should be inferred from his acts in the same manner and to the same extent as if he was sober. But, he is not to be held responsible for *the intent* if he was too drunk for a conscious exercise of the will to the particular end, or, in other words, too drunk to entertain the intent and did not entertain it in fact. However, voluntary intoxication would not be a defense to the crime of manslaughter." (Emphasis supplied.)

In Michigan, the rule is that an accused may interpose the defense of voluntary intoxication where the crime charged requires proof of a spe-

cific intent. *People v Guillett,* 342 Mich 1; 69
NW2d 140 (1955), *People v Miller,* 65 Mich App
65; 236 NW2d 587 (1975), *People v Kelley,* 21 Mich
App 612; 176 NW2d 435 (1970). Assault with in-
tent to do great bodily harm less than murder is a
specific-intent crime. *People v Ingram,* 36 Mich
App 160; 193 NW2d 342 (1971). Although there is
a split of authority within this Court on the ques-
tion,[1] it is apparent to me that first-degree murder
is a specific-intent crime. As to this conclusion
there is no difference of opinion between myself
and my panel colleagues.

However, in the case at bar, the trial judge
properly instructed the jury that intoxication was
a defense to assault with intent to murder, but in
my opinion failed to charge that voluntary intoxi-
cation may negate the intent required for first-
degree murder and assault with intent to commit
great bodily harm less than murder. I disagree
with the majority opinion because I cannot in good
conscience read the "instruction on intoxication as
a defense applied to all charges". The underscored
words "the intent to kill" appearing in the trial
court's instruction on intoxication quoted above
refer back to the offense of "assault * * * with
intent to murder" recited in the first two lines of
the instruction. Under these circumstances the
jury would be unaware that the defense also ap-
plied to the other offenses charged of first-degree
murder and assault with intent to do great bodily

---

[1] *Compare People v Lynch,* 47 Mich App 8; 208 NW2d 656 (1973),
*People v Sharp,* 9 Mich App 34; 155 NW2d 719 (1967), with *People v
Garcia,* 51 Mich App 109; 214 NW2d 544 (1974), *lv granted* 392 Mich
803 (1974). *Also see People v Rufus Williams,* 23 Mich App 459, 463;
179 NW2d 48 (1970), Koenig, *Jury Instructions for Jurors: Proposals
for the Simplification of Michigan Instructions on Murder,* 21 Wayne
L Rev 1, 15–17 (1974), Wise, *Criminal Law and Procedure,* 21 Wayne
L Rev 401, 404 (1975), Dissenting comment by B. Leitman, Proposed
Michigan Criminal Jury Instructions, Final Draft, Vol I & II, Ch 5, p
279.

harm. Failure to object does not preclude defend-
ant from raising the issue on appeal. See *People v
Kelley, supra,* at 631; *cf People v Liggett,* 378 Mich
706; 148 NW2d 784 (1967).

Secondly, I cannot agree that no error took place
when the trial court gave both the capacity and
COOLEY type intoxication instruction. In *People v
Crittle,* 390 Mich 367, 374; 212 NW2d 196 (1973),
our Supreme Court ruled that the correct intoxica-
tion standard was the one established early by
Justice COOLEY and that the capacity standard was
not to be followed.

"These various rules all have one thing in common.
They refer to a *capacity* standard. Their test is not
Justice COOLEY's—'[T]he crime cannot have been com-
mitted when the intent *did not exist.'* Their test is
rather 'the crime cannot have been committed when
the intent *could not exist.'* It is obviously a different
standard and not to be followed."

I am not unaware that in *People v Scott,* 55 Mich
App 739; 223 NW2d 330 (1974), and subsequent
cases[2] it has been held that reversal is not always
required where, as here, the trial court judge gives
an intoxication instruction which incorporates
both the capacity and COOLEY standards. Recently,
*Scott, supra,* has been modified by an opinion of
this Court holding that such instruction must
"clearly and predominantly emphasize the proper
COOLEY standard". *People v Grim,* 65 Mich App

[2] *People v Ringler,* 66 Mich App 202; 238 NW2d 803 (1975), *People
v Parsons,* 59 Mich App 79; 228 NW2d 852 (1975), *People v Scott,* 55
Mich App 739; 223 NW2d 330 (1974). It is also significant that the
organ of the Court in *Scott,* VAN VALKENBURG, J., appears to have
modified the position currently relied upon by the majority. *See
People v Watson,* 59 Mich App 299; 229 NW2d 424 (1975). Note that
*Scott, Parsons,* and *Ringler* were also grounded upon the theory that
*Crittle, supra,* was purely prospective. *But see People v Chambers,* 64
Mich App 386; 236 NW2d 703 (1975).

143; 237 NW2d 221 (1975). In the instant case, the subject instruction predominantly stresses the improper capacity standard.[3] Absence of objection at trial to the instruction on intoxication does not preclude defendant from raising this issue on appeal. See *People v Grim, supra,* at 146. Basically, my difference with the majority opinion on this issue is that the majority relies on *Scott* whereas I would be guided by *Grim.*

I would therefore reverse and remand for a new trial with the following caveats respecting other assignments of error raised that may reappear upon retrial. It is proper to instruct the jury that it may infer defendant intended the natural consequences of his acts if the jury believes the evidence supports the inference. *People v Rivera,* 61 Mich App 427; 232 NW2d 727 (1975). However, a judge should avoid instructing that "the law presumes that every person * * * intends the natural and usual consequences of his own voluntary acts". *People v Jordan,* 51 Mich App 710; 216 NW2d 71 (1974). See also *People v Smith,* 67 Mich App 145; 240 NW2d 475 (1976). Moreover, the following instruction that "[w]hen the death is shown to have resulted from the use of a deadly weapon in the absence of any proof to the contrary, the inference *is* that the death has been done with malice"[4] should be modified to state, for example, that under the circumstances the jury may infer malice from the use of a deadly weapon. In this way, the

---

[3] In the instruction quoted above the disapproved capacity standard is clearly referred to in the first three sentences. The approved COOLEY standard (the intent *did not* exist) is not mentioned until the next to the last sentence of the instruction.

[4] It is true that the trial court followed this sentence with "[M]alice aforethought is· [a] permissible inference and not a presumption arising from the fact after homicide. The element of malice, like all other elements of a crime, must be proven beyond a reasonable doubt." Thus, read as a whole, the instruction is not reversible error in itself.

chances of erroneously shifting the burden of proof is avoided. See *People v Martin,* 392 Mich 553; 221 NW2d 336 (1974). Unless otherwise admissible, a defendant's prior arrest or other acts of misconduct (bad check) should not be mentioned. *People v Buffa,* 51 Mich App 680; 216 NW2d 494 (1974), *People v Deblauwe,* 60 Mich App 103; 230 NW2d 328 (1975). Testimony of a police officer as to the contents of an anonymous phone call he received, *viz.:* identifying defendant as a suspect, should not be repeated. *People v Harris,* 41 Mich App 389; 200 NW2d 349 (1972).

No one of the errors mentioned in the paragraph above is in itself reversible error. But the totality of error, when cumulatively considered together with the reversible type errors which I find in the charge on intoxication, compels me to conclude that defendant received less than a fair trial. Therefore, I would reverse and remand for a new trial.