PEOPLE v HARRISON

Opinion of the Court

1. Witnesses—Criminal Law—Res Gestae Witnesses—Accomplices —Dismissed Charges.

    An accomplice of a defendant need not be indorsed as a res gestae witness at the defendant's trial even though the charges against the accomplice have been dismissed.

2. Witnesses—Criminal Law—Res Gestae Witnesses—Motions for Indorsement—Waiver of Right to Indorsement.

    A defense motion to have the prosecution indorse an alleged accomplice of the defendant as a res gestae witness was untimely where the motion for indorsement came only after the prosecutor rested his case and the defendant had full knowledge of the alleged accomplice's involvement in the incident which formed the basis for the case against the defendant; by waiting without excuse until the prosecutor closed his proofs, the defendant waived any right he may have had to the indorsement and production of the alleged accomplice.

Dissent by N. J. Kaufman, J.

3. Criminal Law—Motions—Directed Verdict—Acquittal— Courts—Evidence.

    *A court, in passing on a motion for a directed verdict of acquittal in a criminal case, must (1) consider only the evidence which had been introduced at the time the motion was made, (2) view that evidence in the light most favorable to the prosecution, and (3) determine whether that evidence, if credible and believed, would justify a reasonable man in concluding that all*

References for Points in Headnotes

[1, 2] 29 Am Jur 2d, Evidence § 708 et seq.
    41 Am Jur 2d, Indictments and Informations §§ 55, 56, 60.
[3] 75 Am Jur 2d, Trial §§ 548–558.
[4] 63 Am Jur 2d, Prostitution §§ 10–12.
[5] 24 Am Jur 2d, Disorderly Houses §§ 23–25.

*elements of the crime were established beyond a reasonable doubt.*

4. Criminal Law—Prostitution—Receiving Earnings of a Prostitute—Elements—Statutes.

*To convict a defendant of the crime of receiving the earnings of a prostitute, it is required that the following elements be established; (1) that the defendant received money or something of value from the prostitute, (2) that the defendant did so knowing the woman to be a prostitute, (3) that the defendant did so knowing the money to be the proceeds of the woman's earnings from prostitution, and (4) that the defendant furnished nothing of value in return for such money (MCLA 750.457; MSA 28.712).*

5. Criminal Law—Prostitution—House of Prostitution—Elements—statutes.

*The conviction of a defendant for maintaining, operating, or keeping or aiding and abetting in the maintaining, operating, or keeping of a house of ill-fame or a bawdy house requires that the following elements be established: (1) the existence of a house of ill-fame or bawdy house, (2) that the defendant kept the house or aided in keeping it, and (3) that the house was resorted to for the purposes of prostitution and lewdness (MCLA 750.452; MSA 28.707).*

Appeal from Ingham, Ray C. Hotchkiss, J. Submitted March 9, 1977, at Lansing. (Docket No. 27917.) Decided May 9, 1977.

Clarence Harrison, Jr., was convicted of receiving the earnings of a prostitute and of maintaining, operating, or keeping or aiding and abetting in the maintaining, operating or keeping of a house of ill-fame or a bawdy house. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Raymond L. Scodeller,* Prosecuting Attorney, and *Lee W. Atkinson,* Chief Appellate Attorney, for the people.

*Spence, Martin & Benedict,* for defendant on appeal.

Before: D. F. Walsh, P. J., and N. J. Kaufman and Allen, JJ.

Per Curiam. Defendant, Clarence Harrison, Jr., was convicted of receiving the earnings of a prostitute, MCLA 750.457; MSA 28.712, and maintaining, operating, or keeping or aiding and abetting in the maintaining, operating, or keeping of a house of ill-fame or a bawdy house, MCLA 750.452; MSA 28.707. He was sentenced to a term in prison of 12-1/2 to 30 years.

On appeal defendant argues that the court committed reversible error in failing to order the prosecutor to endorse one Rose Collins as a res gestae witness.

An accomplice of the defendant need not be endorsed as a res gestae witness even though the charges against her have been dismissed. *People v Moore,* 29 Mich App 597; 185 NW2d 834 (1971). A review of the record leads us to the conclusion that there was sufficient evidence to charge Rose Collins as an accomplice of the defendant. In fact, she was originally so charged although the proceedings against her were discontinued at the time of preliminary examination.

Moreover, defendant had full knowledge of Rose Collins' involvement in the incident which formed the basis for the case against him. His motion for endorsement came only after the prosecutor rested his case. The motion was untimely. *People v Jones,* 38 Mich App 512; 196 NW2d 817 (1972), *lv den,* 388 Mich 792 (1972). By waiting without excuse until the prosecutor closed his proofs, defendant waived any right he may have had to the endorse-

ment and production of Rose Collins. *People v Parsons,* 59 Mich App 79; 228 NW2d 852 (1975).

Our careful review of the entire record further persuades us that the defendant's claims of prosecutorial misconduct are without merit.

Finally, when viewed in a light most favorable to the prosecution, the evidence justified the trial court's denial of defense counsel's motion to dismiss. *People v Bailey,* 69 Mich App 92; 244 NW2d 616 (1976).

The defendant's conviction is affirmed.

N. J. KAUFMAN, J. *(dissenting).* On occasion a case arises which presents difficulties in according the usual deference to a jury's determination of a defendant's guilt. A case of this type requires a discriminating analysis on the part of the appellate court. On the one hand, we must consider the deeply rooted aversion to upsetting the determination of 12 jurors based solely upon our own subjective perception of the defendant's innocence. On the other hand, we must avoid the temptation to affix in a perfunctory manner the label "there was sufficient evidence" and brush aside defendant's protestations to the contrary solely because a jury has returned a verdict of guilty. With this in mind, the proper standard has been framed so that this Court may properly exercise its appellate function.

"In passing on a motion for a directed verdict of acquittal in a criminal case, the reviewing court must (1) consider only the evidence which has been introduced at the time the motion was made, (2) view that evidence in the light most favorable to the prosecution, and (3) determine whether that evidence, if credible and believed, would justify a reasonable man in concluding that all elements of the crime were established beyond a reasonable doubt." *People v Fudge,* 66 Mich App 625, 631; 239 NW2d 686 (1976).

Was this standard met in the instant case? After a careful canvassing of the record, I am inescapably drawn to the conclusion that it was not. Little more than a brief narrative of the evidence adduced at trial to support the people's case will illustrate my reasons for so deciding.

At trial to ascertain the validity of the charges, the people called three police officers who gave their version of the events which transpired on the night in question. They began their testimony by stating that they made an agreement over the telephone with a Janice, a codefendant at trial, for her to "service" them. Thus, as a result of this conversation, they proceeded to the house where the servicing was to occur.

Upon entering the house, they were taken to a bedroom by Janice. They recounted that, in addition to Janice, there was another woman and a small baby, which this woman was caring for, in the house. The woman took the child into a bedroom and closed the door. Thereafter, various conversations between Janice and the officers concerning the cost and procedure of the "servicing" were entered into. A portion of these conversations concerned the source of several bruises on her body. She responded that they were from her pimp. In their endeavor to reach agreement on all of the arrangements, one of the officers expressed concern with Janice retaining the money prior to completion of their business. The officers testified that Janice became irate and proceeded to bring the woman who was caring for the baby into the room and asked the officers if they would rather have her hold the money. The officers responded affirmatively.

After she was handed the money, the woman left the room and continued to the back room

where she had been with the baby. Immediately thereafter, the officers arrested Janice while one went after the woman. The officer opened the door to the back room and informed the woman that she was under arrest. Moreover, he demanded the return of the money. She replied that she did not have the money. As a consequence, the officer looked behind the door where he found the defendant. The officer claimed defendant had the money given to the woman in his hands.

As a result of these actions, as noted by the majority, defendant was convicted of two crimes. The first of these, receiving the earnings of a prostitute, MCLA 750.457; MSA 28.712, requires that the following elements be established to convict a defendant:

"First, that the defendant [accepted/received/levied/ (or) appropriated] money (or something of value) from a prostitute.

"Second, that the defendant did so knowing the woman to be a prostitute.

"Third, that the defendant did so, knowing the money [or other valuable thing] to be proceeds of the woman's earnings from prostitution.

"Fourth, that the defendant furnished nothing of value in return for such money [or other valuable thing]." See Proposed Michigan Criminal Jury Instructions, pp 845–846. (Footnote omitted.)

The people focus upon defendant's presence in the house during the transaction noted above and the ultimate receipt of the money in the hands of the defendant. To be sure, these facts have a significant evidentiary impact and must, therefore, be considered by this Court in its disposition. However, the people ignore much of what is present and, particularly, what is absent from the case. First, defendant received the money from a

woman who was caring for a child in the house and was otherwise unconnected to the "servicing". Moreover, the only reason that the woman had obtained the money is because the officers did not want Janice to retain it. Second, the officers were unaware of defendant's presence in the house and there was no mention that Janice's pimp was around. Third, there was no evidence offered to show defendant knew Janice was a prostitute, knew where the money was from, or that defendant was or had been a pimp. Surely, some of this was necessary to sufficiently establish defendant's guilt. Without it, I can only conclude that a reasonable man would not determine that all elements of the crime were established beyond a reasonable doubt.

Nor does the disposition regarding defendant's conviction for maintaining, operating, or keeping or aiding and abetting in the maintaining, operating, or keeping of a house of ill-fame or a bawdy house, MCLA 750.452; MSA 28.707, stand in a better light. One may start with the fact that the essential elements of this offense are: (1) the existence of a house of ill-fame or bawdy house; (2) the defendant kept the house or aided in keeping it; (3) the house was resorted to for the purposes of prostitution and lewdness. *People v Russell,* 110 Mich 46; 67 NW 1099 (1896), *People v Mayes,* 44 Mich App 482; 205 NW2d 212 (1973).

Again, solely from the evidence recited above, the prosecutor urges we find sufficient evidence to affirm defendant's conviction. Once more, I must disagree. I find absolutely no evidence even tending to establish the second element of the offense. Accordingly, I would reverse defendant's conviction on this offense as well.

Since I would upset the entire verdict of the

jury, I think it appropos to speculate on the reasons why the jury reached such a result and, moreover, illustrate why conviction is such a great danger when a trial court improperly submits a case to a jury. The jury had before it a defendant garishly attired in a blue sequin suit who transmitted, even from a sterile transcript, emanations of playing "superfly" when he took the witness stand. Furthermore, there are repeated references to the events transpiring around the "servicing", with repeated reference to such terms as "half and half" being bandied about in much more graphic language. Additionally, the prosecutor used the term "pimp" during the course of the proceedings implying, of course, that defendant was one. A jury is inevitably subject to the temptation of having these factors cloud their analysis—the temptation being hard to resist. Neither the lack of intelligence at trial on the part of the defendant nor the offensive circumstances and language of the offense is enough to convict a defendant. Hence, I stand by my vote to reverse both of defendant's convictions.