## PEOPLE v CRITTLE

1. COURTS—SUPREME COURT—SUPERVISORY CONTROL—SAVING QUESTION FOR REVIEW.

   The Michigan Supreme Court, in the exercise of supervisory control over all litigation, has the right to consider manifest and serious errors although objection was not made by the party who appeals, since the inherent power of the Supreme Court is not limited by what the appellant is entitled to as a matter of right.

2. CRIMINAL LAW—INTOXICATION DEFENSE—INSTRUCTIONS—SUPREME COURT—SUPERINTENDING CONTROL.

   A case where jury was improperly instructed on intoxication as a defense was one for the Michigan Supreme Court to exercise its superintending control, even though the question was not properly preserved for review, where there was not only an egregious error in the case, but it was an error which has caused confusion and a failure to correctly apply the true rule of law in a number of other cases.

3. CRIMINAL LAW—DRUNKENNESS—INTOXICATION DEFENSE—INTENT—LARCENY.

   Drunkenness cannot excuse crime but when a certain intent is a necessary element in a crime, the crime cannot have been committed when the intent did not exist; in larceny the crime does not consist in the wrongful taking of the property, for that might be a mere trespass, but it consists in the wrongful taking with felonious intent, and if the defendant for any reason whatever indulged no such intent, the crime cannot have been committed.

4. CRIMINAL LAW—DEFENSES—INTOXICATION—INTENT.

   Although intoxication is not a defense where only general intent

REFERENCES FOR POINTS IN HEADNOTES
[1] 20 Am Jur 2d, Courts §§ 78, 79.
[2] 53 Am Jur, Trial § 554.
[3, 4] 21 Am Jur 2d, Criminal Law §§ 81 *et seq.,* 107, 108.
[5, 6] 53 Am Jur, Trial §§ 641, 647.
[7] 53 Am Jur, Trial § 77.

needs to be shown, such as where the crime charged is involuntary manslaughter or statutory rape, it can be shown to negative the requisite specific intent where the crime charged is assault with intent to murder, assault with intent to rape and assault with intent to do great bodily harm less than the crime of murder.

5. CRIMINAL LAW—INSTRUCTIONS—INTENT.

Instructions to the jury that "you would not, however, be justified in acquitting * * * unless you find * * * that he was not conscious of what he was doing or why he was doing it" for a crime requiring specific intent was improper because this is not the law; the test in a specific intent crime only requires that the defendant not have that specific intent.

6. CRIMINAL LAW—INSTRUCTIONS—INTOXICATION DEFENSE.

Trial judges would do well to follow the language that "[t]he crime cannot have been committed when the intent did not exist" and posit their instructions to the jury in terms of whether in the light of defendant's intoxication he in fact had the required specific felonious intent where he is charged with a specific intent crime.

7. CRIMINAL LAW—JURY—FORCED VERDICT.

Lunch-time inquiry of the trial court as to whether the jury thought they might "be reaching a verdict in the next half hour" was not reversible error where the diffident wording of the whole of the judge's inquiry and the time of day would suggest that the judge was cautiously taking a housekeeping action and was successfully trying to stay as far away as possible from creating the impression of pressure.

Appeal from Court of Appeals, Division 3, R. B. Burns, P. J., and Fitzgerald and V. J. Brennan, JJ., affirming Berrien, Chester J. Byrns, J. Submitted April 4, 1973. (No. 13 April Term 1973, Docket No. 53,939.) Decided November 21, 1973.

38 Mich App 118 reversed.

Samuel Crittle was convicted of armed robbery. Defendant appealed to the Court of Appeals. Affirmed. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Ronald J. Taylor,* Prosecuting Attorney, and *Edward L. Skinner,* Assistant Prosecuting Attorney, for the people.

*State Appellate Defender Office* (by *David A. Goldstein), for defendant on appeal.*

WILLIAMS, J. What constitutes a proper jury instruction relative to intoxication where an element of the crime is the existence of a specific intent is the substantial issue in this case.

## I —FACTS

The defendant was involved in a parking accident and seemed to the driver of the bumped car to be intoxicated, slurring his words etc. when they exchanged information. Immediately thereafter defendant entered a grocery store, pointed a gun at a cashier, saying "This is a hold up". The cashier recognized defendant as a customer of two or three months. The cashier asked if he was serious and he said yes. After she gave defendant the paper money, he laid it on the counter and asked "Is that all?" She said there was change and got that. She thought defendant was going to shoot her.

Subsequently, defendant gave back the money (though the owner claimed $40 was missing) and said it was an April Fool's joke and asked if the cashier was all right. He asked and paid for a bottle of beer out of his own money. The cashier noted he slurred his words and staggered out of the store. He had a plastic mask inside his shirt but did not use it.

After notification the police went to defendant's house and arrested him. The police smelled alcohol

on him and noticed he was slurring his words. Defendant told the police and his wife that it was an April Fool's joke.

Defendant was convicted of robbery armed after a jury trial and sentenced to 25–50 years. 38 Mich App 118; 195 NW2d 799 (1972).

## II —CASE FOR SUPERINTENDING CONTROL

To begin with, the error strongly urged by defendant in this case was not properly preserved for appeal. The Court of Appeals did not consider whether the error required reversal giving as a reason "The no objection—no review rule * * * unless there is a miscarriage of justice." 38 Mich App 118, 120.

However, this Court has always reserved the right to review *sua sponte* in an appropriate case. As we said in *People v Harrison,* 386 Mich 269, 275; 191 NW2d 371 (1971):

"This Court has always preserved its right to consider serious errors even in the absence of objection by the party who appeals. Then Justice, now Chief Justice, THOMAS M. KAVANAGH explained this exercise of supervisory control in *People v Dorrikas* (1958), 354 Mich 303, 316 [92 NW2d 305]:

" 'Ordinarily where no timely objection was made to the introduction of such testimony and no request to charge was made, this Court would not examine the points relied upon for reversal, and except under unusual circumstances we have no disposition to relax this rule. Nevertheless, as in a number of previous cases, this Court, in the exercise of supervisory control over all litigation, has often asserted the right to consider manifest and serious errors although objection was not made by the party who appeals. The inherent power of this Court to prevent fundamental injustice is not limited by what appellant is entitled to as a matter of right. *People v Steeneck* [1929], 247 Mich 583 [226 NW

231]; *People v Holmes* [1940], 292 Mich 212 [290 NW 384]; *People v Kelsey* [1942], 303 Mich 715 [7 NW2d 126].' 354 Mich 303, 316."

In our opinion this case is one for us to exercise our superintending control, because there is not only an egregious error in the case, but it is an error which has caused confusion and a failure to correctly apply the true rule of law in a number of other cases.

## III —ISSUE AND LAW

The issue and error involved in this case concern the jury instructions relative to the impact of defendant's intoxication upon his guilt where the charge was robbery armed, which is a crime requiring specific felonious intent.

The rule of law relative to the impact of drunkenness in specific intent crimes is tersely and clearly stated in the words of Justice COOLEY in *People v Walker,* 38 Mich 156, 158 (1878):

"While it is true that drunkenness cannot excuse crime, it is equally true that when a certain intent is a necessary element in a crime, the crime cannot have been committed when the intent did not exist. In larceny the crime does not consist in the wrongful taking of the property, for that might be a mere trespass; but it consists in the wrongful taking with felonious intent; and if the defendant for any reason whatever, indulged no such intent, the crime cannot have been committed."

This language was specifically approved in *People v Guillett,* 342 Mich 1, 5; 69 NW2d 140 (1955). See also *Roberts v People,* 19 Mich 401, 414 (1870) and *People v Paul,* 13 Mich App 175, 177; 163 NW2d 830 (1968).

My Brother LEVIN authoritatively brought this rule up to date while he sat on the Court of

Appeals in *People v Kelley,* 21 Mich App 612, 618–619; 176 NW2d 435 (1970). To conserve space only a key sentence is here reproduced (619):

"Thus, although *intoxication* is not a defense where only general intent needs to be shown, *e.g.,* where the crime charged is involuntary manslaughter or statutory rape, the Michigan Supreme Court has held that it *can be shown to negative the requisite specific intent* where the crime charged is assault with intent to murder, assault with intent to rape and assault with intent to do great bodily harm less than the crime of murder." (Emphasis added and references omitted.)

## IV —APPLICATION OF LAW TO *CRITTLE* CHARGE

The pertinent part of the *Crittle* jury instructions[1] claimed to be in error was:

"You would not, however, be justified in acquitting * * * unless you find * * * that he was not conscious of what he was doing or why he was doing it * * * ."

For a crime requiring specific intent this is not the law. The test, to use Justice COOLEY's words again, is:

---

[1] See Appendix A for the complete text of the instruction on this point that this part of the charge was based on *Roberts v People,* 19 Mich 401 (1870). *Roberts* held " * * * if * * * he was not conscious of what he was doing, or if he did know what he was doing, but did not know why he was doing it * * * then he had not sufficient capacity to entertain the intent" [required to be guilty] 19 Mich 401, 418. This says in effect if a man is not conscious of what he is doing, he cannot have specific felonious intent. *Crittle* does not say that. *Crittle* says in effect the only way the defendant can be innocent, is if he was unconscious of what he is doing, which is quite different and erroneous. COOLEY said if for any reason whatever, the defendant did not have the necessary felonious intent he was innocent. The defendant might not have the necessary felonious intent for reasons other than being unconscious of what he was doing. His intent might be completely innocent or he may have intended only a tort or a lesser crime, *i.e.,* he might have intended only a prank, as the defendant here claimed.

"While it is true that drunkenness cannot excuse a crime, it is equally true that when a certain intent is a necessary element in a crime, the crime cannot have been committed when the intent did not exist * * * if the defendant, for any reason whatever, indulged no such intent, the crime cannot have been committed."

The COOLEY test does not require the defendant to be "not conscious of what he was doing or why he was doing it", it only requires in a specific intent crime that the defendant not have that specific intent.

In terms of the *Crittle* case, if the jury, for example, believed that the defendant was engaging in a drunken prank, however misguided, rather than intending a robbery armed, under the COOLEY test the jury would find the defendant not guilty of robbery armed although it might well find him guilty of some other crime not requiring the same specific intent. Under the *Crittle* rule, however, even if they found defendant only intended a drunken prank, they would be required to find the defendant guilty of robbery armed because in performing the prank he presumably knew what he was doing if not why he was doing it, and hence he would be falling afoul of the *Crittle* instruction without in any way having the intent necessary for robbery armed. The *Crittle* instructions are consequently reversibly erroneous.

## V —CONFUSING INTOXICATION RULES IN SPECIFIC INTENT CRIMES

We come now to the consideration of some of the confusing rules re jury instruction on the effect of drunkenness in specific intent crimes. These rules are expressed in such language as:

"[T]oo drunk to be capable of forming the statutory

intent" *(People v Haley,* 48 Mich 495, 497; 12 NW 671 [1882]);

So intoxicated that they "did not know what they were doing" *(People v Hearn,* 354 Mich 568, 470; 93 NW2d 302 [1958]);

"So intoxicated * * * that he would be incapable of forming an intent * * * and did not know what he was doing" *(People v Stram,* 40 Mich App 249, 252; 198 NW2d 753 [1972]); or

"[S]o far overcome by the intoxication, that he was not conscious of what he was doing, or if he did know what he was doing, but did not know why he was doing it" *(Roberts v People,* 19 Mich 401 [1870]).

These various rules all have one thing in common. They refer to a *capacity* standard. Their test is not Justice Cooley's—"[T]he crime cannot have been committed when the intent *did not exist."* Their test is rather "the crime cannot have been committed when the intent *could not exist".* It is obviously a different standard and not to be followed.

As a consequence, trial judges would do well to follow Justice Cooley's language and posit their instructions in terms of whether in the light of defendant's intoxication he in fact had the required specific felonious intent.

## VI —MINOR ISSUES

The defendant claimed that the jury's mid-deliberation request for instruction was answered with a prejudicial emphasis. Considering both the question, the response thereto and the original instructions we find no reversible error.

The defendant claimed reversible error in a lunch-time inquiry of the trial court as to whether the jury thought they might "be reaching a verdict in the next half hour" as creating "an atmosphere

which seemingly required a hasty verdict". The diffident wording of the whole of the judge's inquiry and the time of day would suggest that the judge was cautiously taking a housekeeping action and was successfully trying to stay as far away as possible from creating the impression of pressure. We find no reversible error.

## VII —CONCLUSION

No reversible error on the minor issues.

On the issue of the jury instruction on the impact of drunkenness on guilt where specific intent is involved we find reversible error.

Reversed and remanded.

T. M. KAVANAGH, C. J., and T. E. BRENNAN, T. G. KAVANAGH, SWAINSON, LEVIN, and M. S. COLEMAN, JJ., concurred with WILLIAMS, J.

## APPENDIX A

### Trial Court's Jury Instruction re Intoxication

Now, ladies and gentlemen, I'm going to instruct you on intoxication as it might apply to this question of intent or knowledge of wrong. One of the necessary elements to constitute the offense charged here, as well as I have identified earlier for certain of the lesser included offenses, is a felonious intent entertained by the Defendant at the time it is claimed he committed such offense. If you find that the act was done and, as I have said before, you must also find that there was an intent to commit such act, if you find the Defendant committed the offense but that he was under the influence of intoxicating liquor to such an extent that he was unable to form the necessary

criminal intent, then you cannot find the Defendant guilty of the crime requiring an intent.

You would not, however, be justified in acquitting the Defendant, even though you found that he was intoxicated at the time of the offense, unless you find that he was intoxicated to such an extent from an overindulgence in intoxicating liquor, as shown by the evidence in the case, that he was not conscious of what he was doing or why he was doing it and so could not have formed the intent.

Consider the actions and speech of the Defendant at the time of the alleged crime and before and after, along with all of the other evidence in the case, in determining whether he was capable at the time of entertaining the necessary intent required even though there may have been drinking.