PEOPLE v JANIGA

1. CRIMINAL LAW—INSTRUCTIONS TO JURY—DEFENSES—INTOXICATION
   —SPECIFIC INTENT.

   An instruction to a jury that a defendant cannot be convicted if
   by reason of intoxication he was incapable of forming the
   necessary specific intent erroneously emphasizes the defend-
   ant's capacity to form the specific intent, rather than whether
   or not the intent did in fact exist; the jury must be allowed to
   assess the existence of specific intent independent of the claim
   of intoxication.

2. CRIMINAL LAW—BREAKING AND ENTERING—INTENT—INSTRUCTIONS
   TO JURY.

   An instruction to a jury which stated that the intent, in a charge
   of breaking and entering with intent to commit larceny, is not
   as necessary to prove as the act itself, is error.

3. CRIMINAL LAW—SPECIFIC INTENT—INTOXICATION—INSTRUCTIONS TO
   JURY.

   A jury may not be instructed that it may imply the existence of
   specific intent to commit a crime as a consequence of voluntary
   intoxication.

4. CRIMINAL LAW—INSTRUCTIONS TO JURY—DEFENSES—INTOXICATION
   —SPECIFIC INTENT.

   Instructions to a jury relating to intoxication as a defense to a
   specific intent crime must clearly direct that (1) specific intent
   must exist to warrant conviction, (2) intoxication can negate
   specific intent, and (3) even if not intoxicated, a defendant may
   lack the requisite intent.

Appeal from Wayne, Thomas Roumell, J. Sub-
mitted April 15, 1976, at Detroit. (Docket No.
23836.) Decided May 27, 1976. Leave to appeal
denied, 397 Mich —.

REFERENCES FOR POINTS IN HEADNOTES
[1, 3, 4] 21 Am Jur 2d, Criminal Law § 107.
[2] 13 Am Jur 2d, Burglary §§ 24–26, 69.

Donald Janiga was convicted of breaking and entering a business place with intent to commit larceny. Defendant appeals by leave granted. Reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals, and *Larry L. Roberts,* Assistant Prosecuting Attorney, for the people.

*James L. Feinberg,* for defendant on appeal.

Before: D. E. HOLBROOK, P. J., and BRONSON and D. C. RILEY, JJ.

D. C. RILEY, J. Defendant appeals his conviction in the Wayne County Circuit Court of breaking and entering a business place with intent to commit larceny, MCLA 750.110; MSA 28.305, and sets forth seven alleged errors committed below.

Defendant was arrested after he was seen leaving a used car office that had been broken into. Defendant claimed that he had entered the building after being assured by his drinking companion that their presence was authorized. He argued that, because he was drunk, he did not form the specific intent required to violate the statute.

One claim of error is determinative and requires that we reverse the conviction. Defendant contends that the trial court issued instructions on intoxication and the necessity of specific intent that confused the jury. We are constrained to agree.

The relevant excerpts of the court's instructions follow:

"Now, you have heard the word 'felonious' used by all parties and I believe even the Court. And felonious is a technical word of the legal vocabulary. It imports that the act charged was done with the mind bent on that which was criminal, with an unlawful and wicked intent and when applied to violations of a criminal statute, if the facts prove the statute was intentionally violated and established upon, then it may be said the crime was feloniously committed.

\*   \*   \*

"The felonious intent in a prosecution for breaking and entering is a question of fact for the jury to be inferred from all the facts and circumstances disclosed by the testimony and evidence received in the course of the trial. On a prosecution for entering a building with intent to commit the crime of larceny, evidence of the commission of other larcenies is admissible as bearing on the question of intent, with which the building was entered.

"The law provides an additional method of proof for the particular purpose of showing motivation, intent, a scheme, a plan or a system for doing an act. Such proof may also be calculated to demonstrate the absence of mistake or accident in the doing of a certain act.

"In this case, the defendant has introduced his record of prior convictions which have included convictions for breaking and entering in the nighttime and at other times. While it is true that proof of guilt of other crimes or of the commission of other similar acts at other times, even though of the same nature as is involved in this case, is not evidence of the commission of the charge in this case, it may, however, be regarded and be considered as proof of motivation, intent, a scheme, a plan or a system of doing an act and that such an act was not the result of mistake or accident.

"The defense has relied upon the drunkenness or intoxication of the defendant. Intoxication is defined as that condition of a person whose physical and mental powers are affected by the use of intoxicating liquors and it is not necessary that the excitement amount to a frenzy. Voluntary intoxication, of whatever degree, constitutes no defense to the commission of a crime. A man

who voluntarily puts himself into a position to have no control over his actions, must be held to intend the consequences. The safety of the community requires this rule. Intoxication is so easily counterfeited and when real is so often resorted as a means of nerving the respondent to the commission of some desperate act and is so inexcusable in itself, that the law has never recognized it as an excuse for crime.

"While it is true that drunkenness or intoxication cannot excuse crime, it is equally true that where a certain intent is a necessary element of offense, the crime cannot be committed without the existence of the intent and such intent is not as necessary to be proved as the act itself. And if a respondent by reason of drunkenness or intoxication was incapable of entertaining such specific intent, a conviction cannot be sustained.

"Voluntary intoxication in such cases may be a defense where it is of a degree which enables a jury to say that the accused was incapable of forming the specific and requisite intent. If the defendant, however, formed the requisite intent before he became intoxicated and while in possession of his mental faculties, his subsequent voluntary intoxication to whatever extent would not shield him. The essence of execution for specific intent crimes to the general rule that intoxication is not a defense, is that the specific intent will be implied as an intentional consequence of voluntary intoxication. To entirely eliminate voluntary intoxication as a defense to a specific intent crime, it must be shown that the defendant while sober formed a specific intent requisite to the commission of the particular crime he is charged with committing."

An analysis of the propriety of particular intoxication instructions concerning offenses requiring specific intent must discuss at least five recent cases.

The leading case is *People v Crittle,* 390 Mich 367; 212 NW2d 196 (1973). *Crittle* held erroneous an instruction which directed the jury to consider

the defendant's capacity to form a specific intent. *Crittle* suggested that the proper emphasis of the court's instruction was the existence of an actual' specific intent. Intoxication could negate the actual intent, but a defendant need not have been intoxicated to have lacked the requisite intent.

*People v Scott,* 55 Mich App 739; 223 NW2d 330 (1974), concluded that the focus of an analysis of intoxication instructions in specific intent charges is the likelihood of jury confusion. If sufficient clarity in instructions is found, a court could give instructions that contained both the "capacity" and the "COOLEY" standards. The standards are not irreconcilably conflicting, but the capacity standard, if standing alone or if overemphasized to the point of excluding the "COOLEY" test, is insufficient.

*People v Parsons,* 59 Mich App 79; 228 NW2d 852 (1975), adopted the *Scott* analysis and concentrated on possible juror confusion. The court suggested that, while a specific excerpt of the instructions emphasized capacity, the instructions in their entirety correctly advised the jury that specific intent must be shown. A capacity instruction, if merely supplemental to proper intent instructions, will not mandate reversal.

*People v Watson,* 59 Mich App 299; 229 NW2d 424 (1975), found instructions and closing arguments that emphasized the capacity standard to be erroneous. Judge VAN VALKENBURG, the author of both *Scott* and *Watson,* focused his analysis on the likelihood of juror confusion.

Finally, in *People v McKenzie,* 67 Mich App 356, 360; 241 NW2d 205 (1976), a panel of this Court upheld a conviction where "the instruction is clear that the question is whether or not the intent did in fact exist * * * ". The potential prejudice of

some confusing language in the instructions was overcome by clear specific intent instructions.

The potential prejudice involved in all of these cases is that the jury, by following the instructions, will necessarily conclude that defendant had the requisite intent once they find that his drunkenness did not incapacitate him. The jury will erroneously be allowed to reason that because defendant was not so drunk, he must have had the intent. The cases clearly hold that the jury must be allowed to assess the existence of specific intent independent of the intoxication claim. Even if the jury concludes that defendant's intoxication did not reduce his capacity to form a specific intent, the jury may still find the absence of specific intent.

In the case at bar, we believe that the capacity standard was emphasized to the point of error. We believe that these instructions allowed the jury to reason that because defendant was not incapacitated, he necessarily had the intent.

Unlike *Parsons,* there is no overall clarity when the instructions are considered as a whole. It is true that the excerpted instructions mention intent on four occasions. The court initially states,

" * * * and when applied to violations of a criminal statute, if the facts prove the *statute was intentionally violated* and established upon, then it may be said the crime was feloniously committed."

This general and ambiguous statement was apparently intended to cover the general mens rea relevant to breaking and entering. It does not appear to us to be a specific intent instruction. See *People v Kelley,* 21 Mich App 612; 176 NW2d 435 (1970).

On the second occasion, the court discusses the

admissibility of prior crimes as bearing on the question of the intent with which the building was entered.

The court stated:

"On a prosecution for entering a building with intent to commit the crime of larceny, evidence of the commission of other larcenies is admissible as bearing on the question of intent, with which the building was entered.

"The law provides an additional method of proof for the particular purpose of showing motivation, intent, a scheme, a plan or a system for doing an act. Such proof may also be calculated to demonstrate the absence of mistake or accident in the doing of a certain act."

A jury at this point in the instructions would probably realize that a specific intent must be proved to warrant conviction.

Accepting that this reference to intent temporarily clarified specific intent does not resolve the issue. When the court turned to the specific question of intoxication, the court's instructions were clearly erroneous. The emphasis on capacity is obvious. The court stated:

"And if a respondent by reason of drunkenness or intoxication was *incapable* of entertaining such specific intent, a conviction cannot be sustained.

"Voluntary intoxication in such cases may be a defense where it is of a degree which enables a jury to say that the accused was *incapable* of forming the specific and requisite intent." (Emphasis added.)

We view this as the "fatal phraseology" condemned in *Crittle* and *Watson*. See *People v McKenzie, supra,* 67 Mich App at 360.

The court's third reference to specific intent, issued in the middle of the intoxication instruc-

tions, does not cure the potential prejudice. The court directed that,

"While it is true that drunkenness or intoxication cannot excuse crime, it is equally true that where a certain intent is a necessary element of offense, the crime cannot be committed without the existence of the intent and *such intent is not as necessary to be proved as the act itself.*" (Emphasis added.)

The final clause in this excerpt nullifies what might otherwise have cured the capacity emphasis. Intent is clearly as necessary to the charge as is the breaking. *E.g., People v Palmer,* 42 Mich App 549; 202 NW2d 536 (1972). The court's instruction to the contrary can hardly be considered as attenuating the capacity emphasis and accentuating the specific intent requirement.

The court's final reference to intent also falls short of satisfying the clarity of instructions requirement of *Scott, supra.* The court's final statement follows:

"If the defendant, however, formed the requisite intent before he became intoxicated and while in possession of his mental faculties, his subsequent voluntary intoxication to whatever extent would not shield him. *The essence of execution for specific intent crimes to the general rule that intoxication is not a defense, is that the specific intent will be implied as an intentional consequence of voluntary intoxication.* To entirely eliminate voluntary intoxication as a defense to a specific intent crime, it must be shown that the defendant while sober formed a specific intent requisite to the commission of the particular crime he is charged with committing." (Emphasis added.)

Here the court seemed to be paraphrasing language employed by Judge, now Justice, Levin, in *People v Kelley, supra.* Unfortunately, the second

sentence of this quoted paraphrase is exactly contrary to Justice LEVIN's opinion.

*Kelley* states:

> "Indeed, the essence of the exception for specific intent crimes to the general rule that intoxication is not a defense is that specific intent will *not* be implied as an intended consequence of voluntary intoxication." 21 Mich App at 626. (Emphasis added.)

The present trial judge told the jury that they could imply specific intent from voluntary intoxication. The error of that instruction is obvious and the instruction cannot possibly be argued as curing the prior emphasis on capacity.

The final sentence of the court's paraphrase of *Kelley* is an accurate paraphrase. The *Kelley* opinion states:

> "Under Roberts *[Roberts v People,* 19 Mich 401 (1870)], to entirely eliminate intoxication as a defense, a defendant must, while sober, have formed the specific intent requisite to the commission of the particular crime he is charged with committing." 21 Mich App at 624. (Footnote omitted.)

The fact that the present trial court concluded its extensive discussion of intent and intoxication with a correct recital of dicta found in the *Kelley* opinion does not salvage the instructions.[1]

---

[1] The soundness of the accurately quoted passage from *People v Kelley,* 21 Mich App 612; 176 NW2d 435 (1970), is not free from doubt. Justice LEVIN drew upon *Roberts v People,* 19 Mich 401 (1870), as the direct source of the statement. *Roberts* was the precise opinion called into question by *People v Crittle,* 390 Mich 367; 212 NW2d 196 (1973). Moreover, we have difficulty with the proposition that the passage attempts to establish. Even if a defendant formed a specific intent while sober, we do not find his guilt established. His subsequent intoxication could, in certain instances, negate his intent. The intoxication could possibly prevent the continuation of the necessary intent.

We conclude that the instructions as a whole do not satisfy the *Scott—Parsons—Watson* interpretation of *Crittle,* for the instructions do not clearly direct that: (1) specific intent must exist to warrant conviction; (2) intoxication can negate specific intent; and (3) even if not intoxicated, defendant may lack the requisite intent. We believe it probable that the jury relied excessively on the capacity instructions and erroneously concluded that because defendant was capable of forming intent he necessarily formed intent.

We reverse.