PEOPLE v SAVOIE

Docket No. 66139. Argued June 7, 1983 (Calendar No. 1).—Decided
    June 5, 1984. Rehearing denied *post,* 1213.

Tony Savoie was convicted by a jury in the Wayne Circuit Court,
    Horace W. Gilmore, J., of first-degree murder. The Court of
    Appeals, J. H. Gillis, P.J., and V. J. Brennan and Miller, JJ.,
    affirmed in an unpublished opinion per curiam (Docket No. 78-
    5506). The defendant appeals, alleging that the trial court erred
    in not instructing the jury on the defense of insanity, that it
    inaccurately instructed the jury on the defense of intoxication,
    and that he was denied the effective assistance of counsel.

In an opinion by Justice Brickley, joined by Justices Ryan,
    Cavanagh, and Boyle, the Supreme Court *held:*

Any error with respect to the instruction on insanity was
    harmless, the instruction on intoxication was not erroneous,
    and there is no basis for the claim of ineffective assistance of
    counsel.

1. A criminal defendant is presumed to be sane. Once any
    evidence of insanity is introduced, the prosecution has the
    burden of proving the defendant's sanity beyond a reasonable
    doubt. In this case, no instruction on the defense of insanity
    was necessary because there was insufficient evidence of insan-
    ity. The defendant offered no expert testimony in support of his
    defense, relying on the testimony of lay witnesses which was
    not germane to the applicable standard: whether the defendant

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 5] 21 Am Jur 2d, Criminal Law § 76.
    29 Am Jur 2d, Evidence § 158.
    Modern status of rules as to burden and sufficiency of proof of
        mental irresponsibility in criminal case. 17 ALR3d 146.
[2] 40 Am Jur 2d, Homicide §§ 251, 256.
[3, 4, 6] 40 Am Jur 2d, Homicide §§ 128, 129, 131, 295.
    Modern status of the rules as to voluntary intoxication as defense
        to criminal charge. 8 ALR3d 1236.
[4] 21A Am Jur 2d, Criminal Law §§ 984, 985.
    76 Am Jur 2d, Trial § 218 *et seq.*
    Adequacy of defense counsel's representation of criminal client
        regarding argument. 6 ALR4th 16.
[5] 75 Am Jur 2d, Trial § 738 *et seq.*

knew what he was doing was right or wrong, or, if he did, whether he had the will power to resist doing the wrongful act. The instruction to the jury on the verdict of guilty but mentally ill was error because that verdict was not available at the time of the offense, but the error was harmless. Because the verdict of not guilty by reason of insanity was also unavailable because of the lack of evidence, the jury could not have been diverted from returning a verdict of not guilty by reason of insanity by the instruction on the verdict of guilty but mentally ill.

2. The proper standard for the defense of intoxication is that articulated more than a century ago—whether the degree of intoxication was so great as to render the accused "incapable of entertaining the intent". The trial court correctly instructed the jury that the defense of intoxication would negate the specific intent element of first-degree murder if the defendant was "so intoxicated that he was unable to form" the requisite intent and "so intoxicated that he could not form" the intent.

3. The thrust of the defense was that the defendant was so intoxicated that he could not have formed the intent necessary to support a conviction of first-degree murder. A statement by defense counsel during closing argument that he personally believed that the defendant loaded the murder weapon and shot the officer did not deny the defendant effective assistance of counsel. In the light of the evidence adduced at trial, denial of those facts would have been frivolous.

Affirmed.

Justice Kavanagh, joined by Chief Justice Williams and Justice Levin, dissented. The trial court erred in failing to instruct the jury on the defense of insanity, and the case should be remanded for a new trial in which proper instructions are given.

1. Once any evidence of insanity is introduced by a criminal defendant, the prosecution has the burden of establishing the defendant's sanity beyond a reasonable doubt. In this case, testimony of lay witnesses and the defendant's demeanor on the stand presented sufficient evidence of insanity from which the jury could have inferred a lack of criminal responsibility and which required an instruction on the defense of insanity.

2. Instructions on the defense of intoxication that the defendant must have been so intoxicated at the time he committed the offense that he *could* not have had an intent to kill were incorrect. The correct test, set out in 1973 and followed since then in case law, is whether the defendant, while intoxicated,

*did* not have the necessary specific intent to commit the crime. There is no reason to modify that test now.

*People v Crittle,* 390 Mich 367; 212 NW2d 196 (1973), overruled.

### Opinion of the Court

1. Criminal Law — Defenses — Insanity.
   The prosecution has the burden of proving a defendant's sanity beyond a reasonable doubt once any evidence of insanity is introduced.

2. Criminal Law — Defenses — Insanity.
   Mere assertions by lay witnesses in a prosecution for murder that the defendant was "weird" or "unable to meaningfully communicate" or "mentally ill" were insufficient to satisfy the standard of "any evidence" required to put the defendant's sanity in issue.

3. Homicide — First-Degree Murder — Intoxication.
   Intoxication will negate the specific intent required to support a conviction of first-degree murder where the defendant was so intoxicated at the time of the offense as to render him incapable of entertaining the intent (MCL 750.316; MSA 28.548).

4. Homicide — First-Degree Murder — Effective Assistance of
   Counsel — Closing Argument — Admission of Facts.
   A statement by defense counsel during closing argument in a prosecution of first-degree murder that he believed that the defendant loaded the murder weapon and shot the victim did not deny the defendant effective assistance of counsel where the thrust of the defense was that the defendant was so intoxicated that he could not form the requisite intent and the facts clearly showed that the defendant did load the weapon and shoot the victim (MCL 750.316; MSA 28.548).

### Dissenting Opinion by Kavanagh, J.

5. Criminal Law — Defenses — Insanity — Instructions to Jury.
   *Once any evidence of insanity is introduced by a criminal defendant, the prosecution has the burden of establishing the defendant's sanity beyond a reasonable doubt; where evidence of insanity sufficient to enable a jury to infer a lack of criminal responsibility is presented, an instruction on the defense of insanity is required.*

6. Homicide — First-Degree Murder — Defenses — Intoxication.
   *A defendant who asserts a lack of intent to kill because of*

*intoxication cannot be convicted of first-degree murder unless it is shown that he had the specific intent to kill (MCL 750.316; MSA 28.548).*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Timothy A. Baughman,* Principal Attorney, Research, Training and Appeals, for the people.

State Appellate Defender (by *Herb Jordan* and *Susan J. Smith)* for the defendant.

BRICKLEY, J. On August 2, 1974, defendant, while in the course of leaving his sister's home, which was surrounded by police, shot and killed a Dearborn police lieutenant.

On September 13, 1975, defendant was convicted of first-degree murder, MCL 750.316; MSA 28.548. That conviction was reversed by the Court of Appeals in July of 1977 for failure to instruct the jury on the defendant's theory of the case. 75 Mich App 248; 255 NW2d 11 (1977).

His second trial, in September of 1978, also resulted in a conviction of first-degree murder which was affirmed by the Court of Appeals in an unpublished opinion per curiam issued on October 27, 1980. We granted leave to appeal. 414 Mich 851 (1982).

The defendant alleges that the trial court erred by failing to instruct the jury on the defense of insanity and by giving an erroneous intoxication instruction, that trial counsel was ineffective, and that reversal is required.

We conclude that any instructional error which occurred was harmless, that the intoxication instruction was not erroneous, and that there is no

basis for the claim of ineffective assistance of counsel.

There is no dispute about the events leading up to the shooting. The defendant went to the home of his sister in the early morning hours of August 2, 1974. Against his sister's wishes, he forcibly retrieved his shotgun which had been locked in his brother-in-law's gun cabinet. In the course of her attempts to get the defendant to leave, defendant's sister caused the police to be notified because of her alarm over the defendant's demeanor and actions. Finally, she and her children vacated the house. The police had surrounded the house when the defendant later attempted to leave carrying a loaded shotgun, and he was asked by the police to surrender it. After some conversation with the police, he fired at and killed Lt. Louis Hinkel. Defendant was wounded in the ensuing gunfire.

Before the second trial, defense counsel filed a notice of intent to enter a plea of insanity. On the first day of trial, following testimony as to defendant's mental condition, counsel was asked by the trial court if he intended to raise a defense of insanity. Upon receiving an affirmative response, the court interrupted the proceedings and gave the jury a preliminary instruction on mental illness, insanity, and the defense of intoxication.[1]

---

[1] The trial court instructed as follows:

"In this case, you will be called upon to determine whether or not defendant is mentally ill and it will also be necessary to consider separately whether the defendant, if you should find him to be mentally ill, was legally insane at the time of the alleged crime. To aid in your consideration, you will now be instructed as to the meaning of the term mentally ill and legal insanity.

"Mental illness means that the defendant acted and that at the time of the act he was suffering from a substantial disorder of thought or mood which significantly impaired either his judgment, his behavior, or capacity to recognize reality, or his ability to cope with the ordinary demands of life.

"Legal insanity means that the defendant was mentally ill and that, in addition to being mentally ill, he was unable to act lawfully

At the close of proofs, defense counsel submitted requests for instructions which included an insanity instruction. This instruction was not given by the trial court. The request for instructions also contained a diminished capacity instruction for intoxication which was given. In addition, the trial court instructed the jury on the verdict of guilty but mentally ill. No objections were made to the instruction.

## I

Complicating the resolution of the insanity issue in this case is the fact that the trial court and possibly trial counsel were laboring under the false impression that Michigan's new statutory definition of legal insanity, enacted between the time the offense was committed and the second trial, was applicable. Clearly it was not.[2] The proper test for insanity for this offense is found in

because of either of the following conditions. If you find that the defendant suffered from a mental illness and at the time either lacked substantial capacity to appreciate the willfulness of his conduct or to conform his conduct to the requirements of the law which he is charged with violating, then he is not guilty by reason of insanity.

"A person who is under the influence of voluntarily consumed alcohol and/or controlled substances at the time of the alleged offense is not for that reason alone to be judged legally insane. However, a person may be mentally ill and intoxicated, with both conditions affecting his action. It is for you to judge whether, under all these circumstances, the defendant was mentally ill at the time of the offense, and then to apply the further test of whether or not the defendant was legally insane.

"I am required by law at this point to give you those instructions. Of course, they will all be repeated at the end of the case."

[2] The preliminary insanity instructions given to the jury were in substantial conformity with CJI 7:8:01 and CJI 7:8:02. These were based upon the definition of legal insanity found in 1975 PA 180, MCL 768.21a; MSA 28.1044(1). By its terms, "[t]his amendatory act shall apply to offenses committed on or after the effective date of this act. The law in effect at the time the offense was committed shall apply to offenses committed before the effective date of this act." The act took effect on August 6, 1975. The offense was committed in 1974.

*People v Martin,* 386 Mich 407, 418; 192 NW2d
215 (1971):

> "The salient elements of the Michigan test are: 1)
> whether the defendant knew what he was doing was
> right or wrong; and 2) if he did, did he have the power,
> the will power, to resist doing the wrongful act? The
> Michigan test encompasses not only a sudden overpow-
> ering, irresistible impulse but any situation or condition
> in which the power, 'the will power' to resist, is insuffi-
> cient to restrain commission of the wrongful act."

In addition, the verdict of guilty but mentally ill
was not an option for the jury in this case.[3]

We now proceed to defendant's contention that
the trial court erred in failing to instruct the jury
on insanity and that reversal is required. Al-
though defendant concedes that no expert testi-
mony was elicited in support of an insanity de-
fense, defendant argues that sufficient lay testi-
mony was introduced to overturn the presumption
of sanity and to entitle him to a jury instruction.

During the course of the trial defendant's expert
witness, a forensic psychiatrist, testified that, in
his opinion, "there is no clinical evidence from
what I can see that he was insane at the time of
the shooting". As a result, defendant is forced to
rely on the testimony of lay witnesses, mostly
family and friends, to establish this defense. De-
fendant characterizes their testimony as follows:
"They painted a picture of a previously normal
adolescent who returned from Vietnam a shell-
shocked young man, tormented by memories of
war atrocities. They described fits of irrationality,
emotional breakdowns, massive and constant con-
sumption of drugs and alcohol, bizarre incidents

---

[3] The verdict of guilty but mentally ill was created by 1975 PA 180,
effective August 6, 1975. See fn 2.

such as having target practice in his mother's
basement, or questioning his parentage. They de-
scribed him as not being in his right mind, as
being sick, as being mentally ill, and as needing
psychiatric help."

The Court of Appeals contrasted the defendant's
conviction with the conviction obtained in *People v
VanDiver,* 79 Mich App 539; 261 NW2d 78 (1977).
In *VanDiver,* the defendant's conviction by a jury
of assault with intent to do great bodily harm less
than murder was reversed because the trial judge
erred in refusing a request for an instruction on
the defense of insanity. The only evidence which
supported an insanity defense in that case was the
defendant's rambling and often incomprehensible
testimony at trial. That testimony revealed that
the defendant had been institutionalized almost
continuously since the age of seven for mental and
emotional disturbances. When asked, the defen-
dant could not explain his behavior, was unable to
describe his emotions on the day of the alleged
assault, and indicated that he was unable to con-
trol his conduct or his feelings on that day.

In upholding the defendant's second conviction
in the present case, the Court of Appeals con-
cluded:

"Unlike the defendant in *VanDiver, supra,* the in-
stant defendant demonstrated an awareness of what
occurred on the night of the incident, and what his
thoughts and feelings were at the time. The record
indicates no history of institutionalization or serious
mental illness prior to the incident. The defendant was
steadily employed by the Ford Motor Company at the
time of the incident. Lay testimony regarding defen-
dant's mental state after returning from Vietnam sug-
gests that the defendant did, at times, show that he was
emotionally troubled by his war experiences. But, in
our view, none of the various testimony introduced to

describe defendant's mental state demonstrated that defendant was ever legally insane according to the definition in *VanDiver, supra,* nor does defendant's or police testimony indicate that defendant was legally insane at the time of the shooting.

"While the record does not indicate whether the court's instructional lapse at the close of trial was an oversight or a conscious refusal to instruct on insanity, we submit that the court was not obligated to give such an instruction because of insufficient evidence in the record."

We think after our own review of the record that the Court of Appeals correctly concluded that the testimony relied upon by defendant is not material to the defense of legal insanity. As we said in *People v Abernathy,* 253 Mich 583, 587; 235 NW 261 (1931), "the sufficiency of the evidence is [to be resolved by] the jury unless there is no evidence at all *upon a material point".* (Emphasis supplied.)

The amount of evidence that is sufficient to overcome the presumption of sanity is minimal. In *People v Garbutt,* 17 Mich 9, 23 (1868), Justice COOLEY described it as "any evidence * * * which tends to overthrow the presumption". The current Michigan standard is stated in *People v Krugman,* 377 Mich 559, 563; 141 NW2d 33 (1966): "A criminal defendant is presumptively sane. However, once there is any evidence introduced of insanity, the burden of proof is on the prosecution to establish defendant's sanity beyond a reasonable doubt. *People v Garbutt, supra; People v Eggleston,* 186 Mich 510; 152 NW 944 (1915)."

Defendant's sister merely testified about his use of alcohol and drugs, his inability to properly communicate, and a sudden, unconnected emotional outburst shortly before the homicide. In response to an inquiry about her brother's mental

condition on the date of this incident, she stated
that he "wasn't in his right mind" and was "sick".
She stated that defendant was angry and drunk,
possibly high, and "weird".

Defendant's brother-in-law stated that defendant
was a lot quieter after his tour in Vietnam. He
testified that he and defendant had discussed de-
fendant's experience in Vietnam. He stated that
he had never witnessed an emotional outburst by
defendant related to his war experiences.

Defendant's girlfriend testified that defendant
had become increasingly dependent on alcohol.
She stated that she had met defendant after his
discharge. She related "combat" stories told to her
by the defendant and testified that defendant
found his Vietnam experience upsetting. She
stated that defendant had never been violent in
her presence. She further stated that, in her opin-
ion, defendant had become mentally ill by August,
1974, and that this mental condition was very
much aggravated when intoxicated. She character-
ized the aggravation as increased depression or
increased despondency. On cross-examination, she
defined mental illness as follows: "My concept of it
would be somebody that can't associate with the
world the way it is now, with their life the way
they have to."

Defendant's aunt testified as a character witness
that the defendant was "mentally sick from drugs
and alcohol" and "mentally ill over his drugs and
his drinking". She based her conclusion on the
defendant's apparent excessive use of alcohol in
her presence, the defendant's periodic use of drugs
in her presence, and the defendant's nonsensical
conversations with her. She testified that on the
night in question the defendant was under the
influence of drugs and alcohol.

Defendant's stepbrother and longtime friend testified that defendant had changed following his tour in Vietnam. He stated that defendant had become increasingly inattentive and was drinking more following his tour in Vietnam. When asked, he testified: "In my opinion, from what I know of him, he needs to talk to somebody about his mental health." On cross-examination, he stated that the defendant's inattention was not normal. On redirect, he stated that his opinion that defendant was mentally ill during July of 1974 took into consideration his knowledge of the defendant's act of target shooting with a shotgun in the basement of the defendant's mother's home.

The people argue that the testimony of these lay witnesses is not germane to the applicable standard for legal insanity: whether defendant knew what he was doing was right or wrong, or, if he did, whether he had the will power to resist doing the wrongful act. We agree.

In addition, the defendant's own direct examination testimony undercuts whatever force the testimony of his lay witnesses might have possessed. While testifying, the defendant denied any alcohol use and any drug use following his tour of duty in Vietnam. As to Vietnam, he denied that he had been involved in active combat or that he had ever killed anyone. The defendant stated that he had been drinking prior to the homicide because it was a hot day. He also stated that he had taken drugs that day. On direct examination, defendant was skillfully led through a narration of the events prior to the homicide. The apparent purpose of this narration was to demonstrate that the defendant could not remember many of the details of his whereabouts prior to the homicide and that defendant had suffered a "partial" blackout. On

cross-examination, although much of defendant's testimony may be characterized as non-responsive and wandering, the prosecutor did elicit from the defendant many specifics about his activities immediately prior to the incident. Defendant did recall having said to the police in this barricade situation, "What have I done wrong?" In addition, the defendant stated that no one could have been harmed by his target practice in his mother's basement because he was alone at the time. And, contrary to his aunt's testimony that he was so drunk he did not recognize her at a bar a few hours before the shooting, defendant recalled seeing her at the bar.

While there is much to suggest that the defendant suffered from a substance abuse problem, mere assertions that defendant was "weird" or "unable to meaningfully communicate" or "mentally ill" are insufficient to satisfy the *Krugman* "any evidence" standard for insanity under *Martin*.[4] In addition, the defendant's own testimony at

---

[4] The defendant argues that voluntary substance abuse should not preclude him from raising a legal insanity defense. The defendant acknowledges the existence of MCL 768.21a(2); MSA 28.1044(1)(2) which states that "[a] person who is under the influence of voluntarily consumed or injected alcohol or controlled substances at the time of his alleged offense shall not thereby be deemed to have been legally insane". Defendant argues that this statute should not foreclose the inquiry in this matter. Defendant avers that prolonged, excessive, or habitual intoxication from drugs or alcohol may be symptomatic of a mental illness or that it may cause mental illness. Whatever the substantive merits of this argument, the simple problem with it is that mental illness was not, at the time of this offense, a recognized way of creating an issue of insanity which could be submitted to the jury. Furthermore, defendant's testimony does not provide a basis for this defense. Defendant denied at trial and to his psychiatrist that he abused alcohol or drugs. On the night in question, defendant stated that he merely had been bar hopping. Although witnesses claimed that defendant was using alcohol to excess, this at best supports the inference that defendant was voluntarily intoxicated. On the basis of the specifics given by the defendant at trial with regard to his whereabouts in the hours immediately preceding the offense, an inference is raised that defendant was not intoxicated. In addition,

trial was consistent with a finding of sanity at the time of the homicide. Defendant asked the police what he had done wrong as he departed from his sister's home. He was reassured when informed he had done nothing wrong. He talked with Lt. Hinkel for some minutes before firing his weapon. He shot Lt. Hinkel after assuring him that the shotgun was not loaded, thus inducing him to stand up from his crouched, protected position.

By way of summary, since there was insufficient evidence of insanity, no insanity instruction was necessary, and the failure by the trial court to instruct on insanity was not error. It is true that a defendant is entitled to a properly instructed jury and that, in this case, the jury was instructed on the verdict of guilty but mentally ill. The giving of this instruction by the trial court, even without objection, was error because such a verdict was not available on the date of this offense.[5] However, the error was at worst harmless. Since we have concluded that the verdict of not guilty by reason of insanity was unavailable to the jury, it could not, as defendant suggests, have been steered away from an insanity verdict by the guilty but mentally ill instruction. Thus, the instruction was merely superfluous and did not prejudice the defense of diminished capacity.

## II

The defendant contends that the trial court committed error requiring reversal in using the "capacity standard" ruled improper in *People v Crittle,* 390 Mich 367; 212 NW2d 196 (1973), in

defendant's aunt stated that the defendant did not recognize her at a bar a few hours before the homicide. Defendant in his testimony at trial directly contradicted her.

[5] See fn 3.

instructing the jury as to his defense of intoxication. The trial court instructed the jury as follows:

"Now in this case the defendant has raised a defense of intoxication, and I want to state to you that the defense of intoxication may be considered only in the charge of first-degree murder. It is not a defense to second-degree murder, manslaughter, involuntary manslaughter, careless and reckless use of a firearm, or felonious assault. The defense of intoxication is available only in the case of first-degree murder because that is called a specific intent crime. If you consider the defense of intoxication, you may consider [it] only with the relationship to the charge of first-degree murder, and it may not be considered as a defense to any of the other crimes that I have listed. It is only a defense to first-degree murder.

"The general law is that drunkenness will not excuse a crime, but where a certain intent is a necessary element of a crime, the crime cannot have been committed when the intent *did* not exist. If you consider the defense of intoxication in the first-degree murder charge, you must determine, if you consider the defense, whether he was so intoxicated that he was *unable* to form the intent and premeditation necessary for first-degree murder. Obviously, the people have the burden beyond a reasonable doubt to prove that he was not intoxicated in this case. So, as I say, the defense of intoxication can only be considered in connection with first-degree murder and you must look at it to see if he was so intoxicated that he *could* not have intent, so intoxicated that he *could* not form the intent necessary for first-degree murder. As I say, the people must prove beyond a reasonable doubt that he was not so intoxicated, but the defense may only be considered in the case of first-degree murder and nothing else." (Emphasis supplied.)

There was no objection to this instruction.

In *Crittle* the trial judge had given the following instruction:

"Now, ladies and gentlemen, I'm going to instruct you on intoxication as it might apply to this question of intent or knowledge of wrong. One of the necessary elements to constitute the offense charged here, as well as I have identified earlier for certain of the lesser included offenses, is a felonious intent entertained by the defendant at the time it is claimed he committed such offense. If you find that the act was done and, as I have said before, you must also find that there was an intent to commit such act, if you find the defendant committed the offense but that he was under the influence of intoxicating liquor to such an extent that he was unable to form the necessary criminal intent, then you cannot find the defendant guilty of the crime requiring an intent.

"You would not, however, be justified in acquitting the defendant, even though you found that he was intoxicated at the time of the offense, unless you find that he was intoxicated to such an extent from an overindulgence in intoxicating liquor, as shown by the evidence in the case, that he was not conscious of what he was doing or why he was doing it and so could not have formed the intent.

"Consider the actions and speech of the defendant at the time of the alleged crime and before and after, along with all of the other evidence in the case, in determining whether he was capable at the time of entertaining the necessary intent required even though there may have been drinking." 390 Mich 375-376.

In *Crittle,* we condemned the instructions given, together with various other instructions, which indicate the standard to be whether the defendant was so intoxicated at the time of the offense that the intent "could not exist". Instead we stated that the test is simply whether the intent "did not exist". However, the issue in *Crittle* was whether the instruction was erroneous. Certainly an instruction on intoxication which informs the jury that they would not be justified in acquitting unless they found that the defendant "was not

conscious of what he was doing or why he was doing it" is not proper. In reaching the conclusion that the instruction given in *Crittle* was improper, we relied upon Justice COOLEY's opinion in *People v Walker,* 38 Mich 156, 158 (1878):

"While it is true that drunkenness cannot excuse crime, it is equally true that when a certain intent is a necessary element in a crime, the crime cannot have been committed when the intent did not exist. In larceny the crime does not consist in the wrongful taking of the property, for that might be a mere trespass; but it consists in the wrongful taking with felonious intent; and if the defendant, for any reason whatever, indulged no such intent, the crime cannot have been committed. This was fully explained by Mr. Justice CHRISTIANCY in *Roberts v People,* 19 Mich 401 (1870), and is familiar law."

Justice CHRISTIANCY, as noted by Justice COOLEY, discussed the question of intoxication as a defense in *Roberts v People,* 19 Mich 418:

"In determining the question whether the assault was committed with the intent charged, it was therefore material to inquire whether the defendant's mental faculties were so far overcome by the effect of intoxication, as to render him *incapable of entertaining the intent.* And for this purpose, it was the right and duty of the jury—as upon the question of intent of which this forms a part—to take into consideration the nature and circumstances of the assault, the actions, conduct and demeanor of the defendant, and his declaration before, at the time, and after the assault; and especially to consider the nature of the intent, and what degree of *mental capacity* was necessary to enable him to entertain the simple intent to kill, under the circumstances of this case—or, which is the same thing, how far the mental faculties must be obscured by intoxication to render him *incapable of entertaining that particular intent."* (Emphasis supplied.)

It is evident that Justice CHRISTIANCY wrote with approval of the "capacity standard" and that Justice COOLEY approved of what Justice CHRISTIANCY had written.

We are convinced that that portion of our opinion in *Crittle* which concluded that the "capacity standard" is improper, per se, was not a correct statement of the law. The proper standard is that articulated by Justice CHRISTIANCY more than a century ago—whether the degree of intoxication was so great as to render the accused "incapable of entertaining the intent". To this extent this opinion diverges from *Crittle, Crittle* is overruled.

The instruction given by the trial court in the instant case accurately informed the jury that the defense of intoxication would serve to negate the specific intent element of the crime charged, if the defendant "was so intoxicated that he was unable to form the intent" and "so intoxicated that he could not form the intent". This instruction was not erroneous.

## III

The defendant argues that he was denied effective assistance of trial counsel because his attorney, in closing argument, expressed to the jury his personal belief that the defendant loaded the shotgun and shot Lt. Hinkel and that the defendant's testimony was untrue. The defendant objects to the following statements made during closing argument:

"Now I will say to you, ladies and gentlemen of the jury, that I don't believe Tony Savoie when he says that he didn't put any pellets * * * slugs in the shotgun."

"Well, I wouldn't come up before you, ladies and gentlemen, and tell you that the same story that Savoie

told you, that he didn't fire the shot or that he didn't fire that gun or that it wasn't his gun—let me put it his way—that it wasn't his gun which shot Lieutenant Hinkel".

The people argue that the quotations from closing argument have been taken unfairly out of context. We agree. The thrust of the defense was that the defendant was so intoxicated that he could not form the necessary intent to support a conviction of first-degree murder. The defendant's memory lapses at trial support this defense. In light of the evidence adduced at trial it was frivolous to argue that the defendant had not loaded the shotgun or shot Lt. Hinkel. When read in its entirety, the record shows that defense counsel ably argued the evidence in support of the defense theory.

Affirmed.

RYAN, CAVANAGH, and BOYLE, JJ., concurred with BRICKLEY, J.

KAVANAGH, J. *(for reversal)*. Defendant Tony Savoie appeals his first-degree murder conviction arising from the shooting of a Dearborn police officer.

The question before us in this case is whether under the circumstances of this case the trial court committed reversible error by failing to instruct the jury on the defense of insanity.

We conclude that reversible error was committed and would remand the case for a new trial in which proper instructions are given.

The facts leading up to the shooting, as set out in defendant's brief, do not appear to be disputed. Tony Savoie went to the home of his sister, Patricia Dobosky, in the early morning hours of August

2, 1974. He demanded his shotgun, which she had locked up for safekeeping after Savoie had conducted a target practice in their mother's basement. He ignored her refusal and went upstairs to his brother-in-law's gun cabinet to get the gun. Alarmed by his demeanor and mental condition, she called the police and departed with her family. Eventually the house was surrounded by at least 12 armed police officers. According to the cumulative testimony of 11 officers who were present, Savoie finally came out of the house, approached his car, refused to put down his shotgun, paced up and down the sidewalk, and, without any apparent motive, rhyme, or reason, shot Lieutenant Hinkel. Savoie was wounded in the ensuing gunfire.

On September 13, 1975, Savoie was convicted of first-degree murder, MCL 750.316; MSA 28.548. The Court of Appeals reversed the conviction because of the trial court's failure to instruct the jury on the defendant's theory of the case. 75 Mich App 248; 255 NW2d 11 (1977).

In September of 1978, Savoie was again convicted of first-degree murder and sentenced to life in prison. The Court of Appeals affirmed in an unpublished per curiam opinion issued on October 27, 1980. We granted leave to appeal. 414 Mich 851 (1982).

Before the second trial, defense counsel filed a notice of intent to enter a plea of insanity. On the first day of the trial, defense counsel affirmed his intention to raise a defense of insanity. At the close of proofs, defense counsel submitted requests for instructions which included an insanity instruction. This instruction was not given by the trial court. No objections were made to the instructions given.

The applicable test for insanity in this case[1] is found in *People v Martin,* 386 Mich 407, 418; 192 NW2d 215 (1971):

"The salient elements of the Michigan test are: 1) whether defendant knew what he was doing was right or wrong; and 2) if he did, did he have the power, the will power, to resist doing the wrongful act? The Michigan test encompasses not only a sudden overpowering, irresistible impulse but any situation or condition in which the power, 'the will power' to resist, is insufficient to restrain commission of the wrongful act."

In Michigan, a defendant in a criminal case is presumptively sane. The amount of evidence that is sufficient to overcome the presumption of sanity is minimal. The current Michigan standard is stated in *People v Krugman,* 377 Mich 559, 563; 141 NW2d 33 (1966): "A criminal defendant is presumptively sane. However, once there is *any* evidence introduced of insanity, the burden of proof is on the prosecution to establish defendant's sanity beyond a reasonable doubt." (Emphasis added.)

Defendant submits that the testimony of lay witnesses in this case and defendant's own demeanor on the stand presented enough evidence of insanity to create a question for the jury. Defendant's characterization of this testimony in his application for leave to appeal is supported by the record:

"Close relatives and friends testified that appellant was a previously normal adolescent who returned from

[1] Michigan codified a new test for legal insanity in 1975 PA 180, MCL 768.21a; MSA 28.1044(1). However, this law did not take effect until August 6, 1975, and offenses committed before this date are governed by the law in effect at the time the offense was committed. The offense in this case was committed on August 2, 1974.

Vietnam a shell-shocked young man, tormented by memories of war atrocities. They described fits of irrationality, emotional breakdowns, massive and constant consumption of drugs and alcohol, bizarre incidents such as having target practice in his mother's basement, or questioning who his parents really were. * * * They described him as not being in his right mind, * * * as being sick, as being mentally ill, * * * and as needing and having sought psychiatric help. * * *

"Appellant's questionable mental condition was also evidenced by his own performance on the stand, where his mind would wander, he would be unresponsive, he would ramble off in tangents and would contradict himself."

The people argue that because these lay witnesses did not testify that defendant was legally insane or discuss his mental condition in terms of the applicable standard for legal insanity set out in *Martin, supra,* their testimony does not support a defense of insanity. We disagree. Descriptions of defendant as not being in his right mind, as being sick, and as being mentally ill (defined by the witness as "somebody that can't associate with the world the way it is now, with their life the way they have to"), and descriptions of defendant's unusual behavior since his return from Vietnam is evidence from which a lack of criminal responsibility could be inferred.

The Court of Appeals ruled that even if the trial court erred in failing or refusing to give the requested insanity instruction, such lapse was harmless error because the jury was instructed on, but rejected, the verdict of guilty but mentally ill. The court reasoned that a finding of mental illness is a prerequisite to a finding of insanity, and because the jury did not find the defendant mentally ill, the jury could not have found him to be insane.

We disagree with the court's reasoning and conclusion. First, under the standard for legal insan-

ity applicable to this case, there is no prerequisite that a defendant be first found mentally ill before being found insane. *Martin, supra.* Second, the trial court erred by instructing on the guilty but mentally ill verdict. The statute creating this verdict, 1975 PA 180, specifically states that this verdict is available only where the offense is committed on or after the effective date of the act, August 6, 1975. 1975 PA 180, §§ 2, 3. Third, under the terms of the instruction given by the trial court, a verdict of guilty but mentally ill required a finding that the defendant was not insane at the time of the commission of the offense.[2] Thus, the jury's finding against mental illness did not necessarily rule out a finding of insanity.

We conclude the trial court committed reversible error by failing to instruct the jury on the defense of insanity.

Defendant also argues that the trial court erroneously instructed the jury on the intoxication

---

[2] The trial judge instructed the jury as follows:

"Now first I must define mental illness for you. Mental illness means a substantial disorder of thought or mood which significantly impaired either his judgment, behavior, or capacity to recognize reality, or his ability to cope with the ordinary demands of life. If you have a reasonable doubt as to whether the defendant was mentally ill, you must then find him mentally ill.

"*Now the verdict in that case would be guilty but mentally ill, but to arrive at this verdict, you must be convinced beyond a reasonable doubt that the defendant* committed the crime charged and that he *was legally responsible for his actions.* In other words, before returning a verdict of guilty but mentally ill of any of the charges I have listed, *you must find first beyond a reasonable doubt* that the defendant committed the crime. Second, that at the time he committed the crime he was mentally ill. Third, *that at the time of the act he knew that he was doing wrong and he had the substantial capacity to conform his conduct to the requirements of law with which he is charged in violating. In other words, before you can find the defendant guilty but mentally ill,* you must first find him guilty beyond a reasonable doubt of the offense. Secondly, you must find that he was mentally ill at the time of the commission of the offense, and I have defined mentally ill to you, and third, *you must find that the defendant was not legally insane at the time of the commission of the offense.*" (Emphasis added.)

defense by using the capacity standard,[3] a standard which was rejected by this Court in *People v Crittle*, 390 Mich 367; 212 NW2d 196 (1973). In *Crittle*, the Court dealt at length with acceptable versus unacceptable jury instructions on the effect of drunkenness in specific intent crimes. We concluded that instructions are erroneous which indicate the standard to be whether the defendant was so intoxicated at the time of the offense that the intent "could not exist" (the capacity standard). We held that the correct test is whether the intoxicated defendant did have the necessary specific intent to commit the crime.

The *Crittle* decision has remained the standard of review for intoxication defense instructions. *People v Rich*, 397 Mich 399; 245 NW2d 24 (1976); *People v Prast (On Rehearing)*, 114 Mich App 469; 319 NW2d 627 (1982); *People v Theodore Jones*, 82 Mich App 510; 267 NW2d 433 (1978). We see no reason to modify this standard today. Therefore, we conclude that the intoxication defense instruction given by the trial court in this case was erroneous.

---

[3] The trial judge instructed the jury as follows:

"The general law is that drunkenness will not excuse a crime, but where a certain intent is a necessary element of a crime, the crime cannot have been committed when the intent did not exist. If you consider the defense of intoxication in the first-degree murder charge, *you must determine,* if you consider the defense, *whether he was so intoxicated that he was unable to form the intent and premeditation necessary for first-degree murder.* Obviously, the people have the burden beyond a reasonable doubt to prove that he was not intoxicated in this case. So, as I say, the defense of intoxication can only be considered in connection with first-degree murder and *you must look at it to see if he was so intoxicated that he could not have intent, so intoxicated that he could not form the intent necessary for first-degree murder.* As I say, the people must prove beyond a reasonable doubt that he was not so intoxicated, but the defense may only be considered in the case of first-degree murder and nothing else." (Emphasis added.)

We would reverse and remand for a new trial in which proper instructions are given.

WILLIAMS, C.J., and LEVIN, J., concurred with KAVANAGH, J.